## Gary Lee Simmons

### V.

## Commonwealth of Virginia

Record No. 880954

June 9, 1989

Present: All the Justices

*Linda L. Johnson (Binford, Johnson & Cloninger*, on brief), for appellant.

*Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General*, on brief), for appellee.

Justice Lacy delivered the opinion of the Court.

In this appeal, we examine the constitutionality of a roadblock established for the purpose of checking the equipment and the registration of motor vehicles.

At 8:00 p.m. on July 10, 1986, two Virginia State Troopers set up a checking detail or roadblock at the intersection of Route 601 and Route 776 in Dinwiddie County. The troopers stopped all vehicles entering the checkpoint and inspected drivers' licenses and equipment.

Gary Lee Simmons, who had been fishing that afternoon, was stopped at the checkpoint at 8:55 p.m. One of the officers, Trooper Crowder, observed that Simmons' eyes "were very red," and that Simmons had a strong odor of alcohol on his person. When asked whether he had been drinking, Simmons admitted that he had consumed five beers. Requesting that Simmons pull over and step

out of his vehicle, Trooper Crowder administered two dexterity tests, which Simmons failed. Trooper Crowder then arrested Simmons for driving under the influence of alcohol. Simmons elected to have his breath analyzed; his blood alcohol content was .11 percent.

At trial, the Commonwealth called Trooper Crowder as its only witness. Trooper Crowder testified that the two troopers had stopped all the vehicles coming through the checkpoint during the hour prior to stopping Simmons. Trooper Crowder explained that the two troopers had established the checkpoint without any prior direction from their superiors and without an existing plan. Trooper Crowder also testified that the troopers had total discretion regarding where and when they would set up the roadblock.

Because no supervisor specifically had instructed the two troopers to establish the checkpoint, Simmons argued that his stop at the checking detail did not comply with the roadblock criteria established in *Lowe* v. *Commonwealth*, 230 Va. 346, 337 S.E.2d 273, *cert. denied*, 475 U.S. 1084 (1986). On the premise that the stop was impermissible, Simmons argued that his breath test results were inadmissible. Overruling Simmons' motion to suppress the evidence obtained from the stop, the trial court held that because "all traffic was stopped and checked," the seizure did not violate Simmons' Fourth Amendment rights. On appeal, the Court of Appeals affirmed the decision of the trial court. *Simmons* v. *Commonwealth*, 6 Va. App. 445, 457, 371 S.E.2d 7, 14 (1988).

Stopping an automobile and detaining the occupants at a roadblock constitutes a seizure under the fourth amendment of the United States Constitution. *Delaware* v. *Prouse*, 440 U.S. 648, 653 (1979); *United States* v. *Martinez-Fuerte*, 428 U.S. 543, 556 (1976). This Court recently addressed the constitutionality of a drunk driving conviction based on evidence obtained at a roadblock. In *Lowe* v. *Commonwealth*, we undertook the analysis required to determine whether a specific roadblock was constitutional under the Fourth and Fourteenth Amendments to the United States Constitution and art. I, § 10 of the Constitution of Virginia. Citing *Delaware* v. *Prouse* and *Brown* v. *Texas*, 443 U.S. 47 (1979), we indicated that the legitimacy of a roadblock is determined by weighing the state's interests in establishing the roadblock against the potential intrusions on personal privacy. *See Lowe*, 230 Va. at 349-50, 337 S.E.2d at 277. To avoid constitutionally impermissible infringements on privacy, the roadblock

must be carried out pursuant to a plan or practice which is explicit, contains neutral criteria, and limits the conduct of the officers undertaking the roadblock. Such a plan serves to insure that one's "reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown*, 443 U.S. at 51.

In *Lowe*, we found "overwhelming" public interest in eliminating drunken drivers from Virginia's highways. 230 Va. at 350 n.2, 337 S.E.2d at 276 n.2. In weighing this interest against potential invasions of personal privacy, we reviewed a record replete with evidence showing that the procedure for establishing roadblocks was "safe and objective in its operation, employ[ed] neutral criteria, and [did] not involve standardless, unbridled discretion by the police officer in the field." *Id.* at 352, 337 S.E.2d at 277. Consequently, we held that the intrusion on the reasonable expectation of personal privacy, as it occurred in *Lowe*, was permissible.

Applying the first prong of the *Lowe* analysis to this case, it is clear that the state has a vital interest in enforcing its motor vehicle laws regarding licensure and equipment. *See Prouse*, 440 U.S. at 658-59. Turning to the second prong of the analysis, this record is practically devoid of any evidence which reflects the existence of safeguards against an unreasonable intrusion upon personal privacy resulting from the roadblock. The only evidence is Trooper Crowder's statement that "[o]ur normal procedure is to stop all vehicles."

The Commonwealth argues that this evidence is sufficient to establish that Simmons' seizure at the roadblock was reasonable. The constitutional requirements for roadblocks are met in this case, the Commonwealth asserts, because the troopers stopped every car and, therefore, avoided random selection or spot checks of cars. The Commonwealth maintains that, having complied with a "possible alternative" set forth by *Prouse*, the troopers were not acting with "unbridled discretion." Furthermore, the Commonwealth, recognizing that *Lowe* requires a "practice embodying neutral criteria," asserts that there "simply cannot be a more 'neutral' criterion for conducting a checkpoint than a requirement that all vehicles will be stopped."

We do not read *Prouse* to stand for the proposition that stopping *all* traffic at a roadblock constitutes sufficient restraint on the exercise of discretion by police officers to transform the stop into a constitutionally valid roadblock. While this approach may

eliminate the constitutional vice inherent in a random spot check or stop and therefore be a preferred practice, as we indicated in *Lowe*, applying *Prouse* and *Brown*, and reaffirm here, the road-block also must be undertaken pursuant to an explicit plan or practice which uses neutral criteria and limits the discretion of the officers conducting the roadblock.* The evidence in this case establishes that the decision to establish the roadblock as well as its location and duration was solely within the discretion of the troopers. No advance approval or authorization from any supervisor or superior officer was required to set up the roadblock. A statement that the troopers followed standard operating procedure in stopping every car is not sufficient to establish that an explicit plan or practice existed regarding roadblock or check point procedures.

█ Under the Fourth Amendment, the Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure. *Coolidge* v. *New Hampshire*, 403 U.S. 443, 454-55 (1971); *Vale* v. *Louisiana*, 399 U.S. 30, 34 (1970). On the basis of this record, we hold that the Commonwealth has not met its burden. Without evidence that the troopers were using an objective, nondiscretionary procedure, we hold that the initial stop of Simmons' automobile violated the Fourth Amendment. Because the initial detention of Simmons was unreasonable, the trial court should have suppressed all of the evidence seized as a result of that stop. Accordingly, the judgment of the Court of Appeals affirming the trial court will be reversed and the prosecution will be dismissed.

*Reversed and dismissed.*

Justice Thomas, with whom Justice Whiting joins, dissenting.

In this case, two Virginia State Troopers aided by at least two State Park Police officers set up a checking detail for licenses and registrations** at the intersection of two state highways in Dinwiddie County. The roadblock was established in the daylight hours of July 10, 1986. Flags were set out in the road to warn the

---

\* Emergencies or exigent circumstances may justify establishing a roadblock without prior authorization from a higher authority.

\*\* Code §§ 46.1-7 and 46.1-8, then in effect, authorized uniformed peace officers to stop vehicles to check licenses, registrations, and compliance with safety regulations.

motorists of the roadblock. All cars were stopped. In setting up the roadblock and in stopping all cars, the Troopers were following what were described as "normal procedures." Despite these facts, the majority concludes that the roadblock violated Simmons' constitutional rights. I disagree.

The majority rests its decision largely upon *Lowe* v. *Commonwealth*, 230 Va. 346, 337 S.E.2d 273, *cert. denied*, 475 U.S. 1084 (1986). *Lowe* was an effort to determine whether the roadblock under review comported with Federal constitutional requirements. We said it did. But that was all we said. *Lowe* was not based upon State law. Instead, it was based on Federal law. 230 Va. at 348 n.1, 337 S.E.2d at 274 n.1. Today, based on *Lowe*, which, again, was based on Federal law, the majority declares unconstitutional a roadblock which, in my opinion, fully comports with Federal constitutional requirements.

In *Delaware* v. *Prouse*, 440 U.S. 648, 663 (1979), Justice White, writing for a majority of seven of the justices stated explicitly that "[q]uestioning of all oncoming traffic at roadblock-type stops" was one possible alternative method of checking automobiles for safety violations and drivers for license violations — rather than conducting random spot checks of individual drivers — because roadblock-type checks involved "less intrusion" and did not involve "the unconstrained exercise of discretion" by police officers. Further, Justice Blackmun wrote a concurring opinion in which Justice Powell joined. They agreed that roadblock-type stops were constitutionally permissible but, they went further to state that they would not even require that all cars be stopped. They espoused the view that "other not purely random stops," such as stopping every 10th car, would satisfy the Constitution. *Id.* at 664 (Blackmun, J., concurring).

Inexplicably, a majority of this Court states that it, in effect, does not believe what the Supreme Court said. The majority dismisses the foregoing quoted language by simply stating "[w]e do not read *Prouse* to stand for the proposition that stopping *all* traffic at a roadblock constitutes sufficient restraint on the exercise of discretion by police officers to transform the stop into a constitutionally valid roadblock." Ante at ___. I do not see how the Supreme Court's language could be read any other way.

An analysis of *Prouse* illustrates why stopping all cars at a roadblock satisfies the Supreme Court's concerns regarding limitations on intrusive police conduct and restraints on police discre-

tion. *Prouse* involved a police officer on routine patrol who decided, for no particular reason, to stop one car to check the driver's license and registration. The State of Delaware argued that because of the state's interest in ensuring the safety of its roadways, there should be no constraints on police officers in deciding to stop any particular car. In rejecting that argument, Justice White first pointed out that when the stop was made the police officer "was not acting pursuant to any standards, guidelines, or procedures pertaining to document spot checks, promulgated by either his department or the State Attorney General." 440 U.S. at 650. Here, the Trooper who testified said he was acting in accordance with "normal" department procedures.

In *Prouse*, the Supreme Court agreed, even in the absence of evidence on the issue, that "the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed." *Id.* at 658. But, because even a brief stop for a limited purpose is a seizure, *Prouse* said further that the permissibility of a stop turns on a balancing test between the "intrusion" on the one hand and the "promotion of legitimate governmental interests" on the other. *Id.* at 654. Then, based on *United States* v. *Martinez-Fuerte*, 428 U.S. 543 (1976), *Prouse* stated that a stop at a border patrol checkpoint is less intrusive than a random stop by a roving patrol. *Prouse* quoted from *Martinez-Fuerte* as follows: " 'We view checkpoint stops in a different light because the subjective intrusion — the generating of concern or even fright on the part of lawful travelers — is appreciably less in a case of a checkpoint stop.' " 440 U.S. at 656 (*Martinez-Fuerte*, 428 U.S. at 558).

*Prouse* expressed concern about the "possibly unsettling show of authority" involved when a police officer directs one car to pull over. But, it said that by contrast, " '[a]t traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion.' " 440 U.S. at 657 (*United States* v. *Ortiz*, 422 U.S. 891, 894-95 (1975)). Thus, *Prouse* made clear that as a basic proposition, roadblock-type checks are less intrusive than individual stops.

*Prouse* also made clear the dimensions of the unconstrained discretion on the part of a police officer which gave the Court con-

cern. The majority here suggests that the concern should be with who ordered the roadblock, who picked the site of the roadblock, who decided the time of the roadblock. *Prouse*, however, makes clear that in discussing unbridled discretion, the Court did not focus on any of the foregoing factors. Here is what the Supreme Court said on the point:

> When there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations — or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered — we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver. *This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent.*

440 U.S. at 661 (emphasis added) (footnote omitted). I take this language to mean that the Supreme Court was concerned about an individual field officer "willy-nilly" picking one car out of hundreds to stop. The Supreme Court, in my view, was not concerned with whether a police officer had a direct order to establish a roadblock at a particular time or place.

The discussion in *Prouse* concerning intrusion and police discretion suggests to me that the Court was serious when it wrote that "[t]his holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. *Questioning of all oncoming traffic at roadblock-type stops is one possible alternative.*" *Id.* at 663 (emphasis added). What happened in the instant appeal is in full compliance with what the Supreme Court said in *Prouse*; I would not require more.

Nor is my view altered by *Brown* v. *Texas*, 443 U.S. 47 (1979), a case cited in *Lowe* and by the present majority. *Brown* was not a roadblock case; it did not even involve stopping a car. *Brown* concerned stopping a man who was walking in an alley and was asked

by police to identify himself. *Brown* is factually inapposite. *Prouse* is on point; I would follow *Prouse*.

In my view, *Lowe* was correctly decided. But in *Lowe*, this Court said only that the particular roadblock under review passed muster under the Federal Constitution. Today we say, in effect, that unless the factors which were present in *Lowe* are present with regard to every roadblock, those roadblocks will violate the Federal Constitution. We reach this conclusion even though the United States Supreme Court has said that a roadblock in which all cars are stopped for a license and registration check does not violate the Federal Constitution. By this opinion, the Court throws into disarray the law concerning roadblock-type checks and simultaneously creates the possibility that henceforth every roadblock will be challenged to determine who ordered it and the motivation for its use. In my view, the Court of Appeals correctly decided this case. I think further that what the majority of this Court has done is unnecessary and unwise. Therefore, I dissent.