## CIRCUIT COURT OF ALBEMARLE COUNTY

Commonwealth of Virginia

v.

James P. Tipton, III

## May 14, 1992

BY JUDGE PAUL M. PEATROSS, JR.

This matter comes before the court on the Defendant's Motion to Suppress the results of a blood test administered to the Defendant at the University of Virginia Hospital following an automobile accident on August 3, 1991. An evidentiary hearing was held on April 15, 1992.

### Factual Findings of Court

On August 3, 1991, at approximately 2:15 a.m., the Defendant in this case, James R. Tipton, III, was involved in a two-car accident on Route 250 West in Albemarle County. The officer responding to the scene was Trooper Parker, who found emergency personnel on the scene and treating injured victims upon his arrival. Trooper Parker sought information as to the drivers of the two vehicles, and one of the rescue personnel informed the trooper that the Defendant, Mr. Tipton, was the driver of one of the vehicles and that there was a detectable odor of alcohol about Mr. Tipton following the accident. Trooper Parker was also told that Mr. Tipton was cursing and behaving in a belligerent manner when first spoken to and that he had told the rescue personnel that he had consumed three beers and had "screwed up."

By the time Trooper Parker had arrived at the scene of the accident, however, Mr. Tipton had already been transported to the University of Virginia hospital emergency room. Because trooper Parker could not leave the accident scene, he radioed his dispatcher that he had probable cause for a possible "DWI" arrest, and that he needed

another trooper to conduct a follow-up investigation of Mr. Tipton at the hospital. He did not tell the dispatcher of the amount of alcohol consumed but did inform the dispatcher that there was a possible fatality involved.

The dispatcher telephoned Trooper Pannell in Albemarle County at his home at 3:14 a.m. and advised him that Trooper Parker was investigating an accident crash and that the dispatcher wanted him to go to the hospital to get a blood test and an interview from the driver, who was erroneously identified as "Phillips." Upon arriving at the hospital at 3:57 a.m., Trooper Pannell, who was in uniform, talked to the nurses at the emergency room and was told that the crash victim from the area of the accident was indeed registered as Phillips. Trooper Pannell subsequently went to the emergency room and spoke to the Defendant, identifying himself as a state trooper. Mr. Tipton verified that he had been involved in the crash and that his name was Tipton and not Phillips.

At that point, Trooper Pannell read Mr. Tipton his Miranda rights and also read him the "implied consent" law found in Va. Code § 18.2–268(b). After hearing the implied consent law, Mr. Tipton informed Trooper Pannell that he wished to take a blood test. He informed the trooper that he had been coming down the mountain and had seen bright lights, and that upon seeing the lights he swerved to avoid the lights and a crash occurred. He further informed Trooper Pannell that he wanted a blood test because he had only had three beers at 8:00 p.m. that evening. The trooper responded that Mr. Tipton was entitled to a blood test for his own defense and proceeded to enlist the aid of a physician to administer the test.

At the time the test was given, Trooper Pannell had not placed Mr. Tipton under arrest, nor did he believe that he had authority to make an arrest under Va. Code § 19.2–81. Consequently, the Commonwealth concedes that the blood test is not admissible under Va. Code § 18.2–268(b), since it was taken more than two hours after the accident and was not taken pursuant to a valid arrest. Instead, the Commonwealth contends that Trooper Pannell was entitled to conduct a search of Mr. Tipton because he consented to the test and that, even absent such consent, there was sufficient probable cause to justify an exception to the warrant requirement of the Fourth Amendment of the United States Constitution.

## Question Presented

In considering the Defendant's Motion to Suppress, this court must determine whether the results of the warrantless blood test administered to the Defendant will be admissible as evidence obtained through a consensual search, and also whether the results would be admissible under any relevant exceptions to the Fourth Amendment warrant requirement.

## Discussion

The Supreme Court has acknowledged that a blood test of the sort administered to the Defendant in the case at bar plainly qualifies as a "search" within the meaning of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767–768, 86 S. Ct. 1826, 1833–34, 16 L. Ed. 2d 908 (1966). Furthermore, any subsequent examination of the blood obtained through that test may also be a search, if doing so infringes an expectation of privacy that society recognizes as reasonable. *Skinner v. Railway Labor Executives Association*, 489 U.S. 602, 619, 109 S. Ct. 1402, 1414, 103 L. Ed. 2d 639 (1989). Except in certain well-defined circumstances, a search and seizure conducted without a warrant issued upon probable cause is *per se* unreasonable. *Crosby v. Commonwealth*, 6 Va. App. 193, 197 (1988). In order to introduce the evidence obtained in the warrantless search of Mr. Tipton's blood, then, the Commonwealth bears the burden of showing that this case falls into one of those well-defined exceptions. *Simmons v. Commonwealth*, 238 Va. 200, 204 (1989).

### Warrantless Consensual Searches

It is well-established that one exception to the warrant requirement occurs when a subject voluntarily consents to a search of his person or property. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043, 36 L. Ed. 2d 854 (1973). In the case now before the court, the Commonwealth contends that the Defendant voluntarily asked to have a blood test performed and that this request rendered the blood test a consensual search.

It is clear, however, that any consent actually granted by Mr. Tipton is tainted by Trooper Pannell's recital of the "implied consent" law. Where, as here, an arrest has not taken place within two hours of the alleged offense, the "implied consent" law will not apply, and a defendant will not be deemed to have given implied consent to a

blood or breath test under Va. Code § 18.2–268(b). *Thomas v. Town of Marion*, 226 Va. 251, 254 (1983). By reading the "implied consent" law, Trooper Pannell generated a belief in the Defendant that he was bound to submit to either a blood test or a breath test and that his only option was to choose between the two. *Id.* The Defendant's request for a blood test thus may have been simply a choice between what he perceived to be his only two options, rather than a conscious and voluntary decision to submit to a blood test. Accordingly, the Defendant's actual consent is rendered invalid.

## Warrantless Searches Without Consent

Even where there is no voluntary consent to a search, however, the Supreme Court has recognized several exceptions to the warrant requirement. One such exception is the search incident to a lawful arrest. *Reid v. Boylan*, 929 F.2d 990, 994 (4th Cir. 1991). Another well-established exception occurs when there are exigencies in a situation which make such an exception "imperative." *New York v. Belton*, 453 U.S. 454, 457, 101 S. Ct. 2860, 2862, 69 L. Ed. 2d 768 (1981).

### 1. *Search Incident to Arrest*

Virginia Code § 19.2–81 contains the requirements necessary to enable a police officer to make a lawful warrantless arrest. For example, the section authorizes a warrantless arrest where the arresting officer has reasonable grounds or probable cause to believe that the suspect has committed a felony not in his presence. *Crowder v. Commonwealth*, 213 Va. 151, 152–53 (1972). Law enforcement officers may also make warrantless arrests at a hospital of any person involved in a motor vehicle accident even though the crime was not committed in the officer's presence, provided the officer is in uniform or displaying a badge of office and has reasonable grounds to believe, based on personal investigation, that a crime arising from the accident was committed by that person. *Paige v. City of Lynchburg*, 10 Va. App. 162, 163 (1990).

In the case at bar, the Commonwealth has failed to demonstrate that Trooper Pannell had the requisite authority to make a valid arrest under § 19.2–81. According to Trooper Pannell's own testimony, the message from the dispatcher summoning him to the hospital failed to include any information concerning fatalities suffered in the accident. As a result, Trooper Pannell had no reason to

believe that the Defendant had in fact committed a felony at the time the blood test was performed.

Furthermore, all of the information known to Trooper Pannell concerning the accident came not from his own personal investigation of the accident scene, but from the dispatcher's message and from Tipton's own statements. A defendant's warrantless arrest for driving under the influence is unlawful where the officer's only source of knowledge is a radio call for assistance. *Durant v. City of Suffolk*, 4 Va. App. 445, 448 (1987). Probable cause for what appears to be a misdemeanor arrest in such a circumstance must have some basis in the officer's own personal investigation. *Paige*, 10 Va. App. at 163.

Thus, it is clear that Va. Code § 19.2–81 would not have authorized Trooper Pannell to make a warrantless arrest of Mr. Tipton at the hospital, based on the knowledge he had at the time. He did not yet know of the potential felony charge against Mr. Tipton, nor had he conducted the "personal investigation" of the accident site which would permit a warrantless arrest for a misdemeanor. Accordingly, the blood test administered to the Defendant cannot be justified as a search incident to a valid arrest under Virginia law.

However, the fact that Virginia law would not have authorized Trooper Pannell to make a warrantless arrest does not mean that the evidence obtained in the blood test must necessarily be excluded. The mere fact that Virginia has adopted a more stringent statutory requirement for warrantless misdemeanor arrests does not mean that a defendant has acquired a greater constitutional privilege. *Penn v. Commonwealth*, 13 Va. App. 399 (1991). Furthermore, under Virginia law, no suppression of evidence is required when the evidence is obtained in violation of state law but when no constitutional violation has occurred. *Thompson v. Commonwealth*, 10 Va. App. 117, 121–22 (1990). Although violations of state procedural statutes are to be viewed with disfavor, neither the Court nor the legislature has adopted an exclusionary rule in response. *Id.*

### 2. Constitutional Requirements

The Supreme court has held that a warrantless search must be based, as a general matter, on probable cause to believe that the person to be searched has violated the law. *Skinner*, 489 U.S. at 623, 109 S. Ct. at 1416–17. Under *Cupp v. Murphy*, 412 U.S. 291, 296–97, 93 S. Ct. 2000, 2003–04, 36 L. Ed. 2d 900 (1973), a warrantless search incident to arrest will be constitutionally valid if the officer

had probable cause to believe: (1) that a crime had been committed by the defendant; (2) that evidence of the crime would be found in the search; and (3) that an immediate, warrantless search was essential to prevent the destruction or loss of evidence. An actual arrest prior to the search is not necessary. *Id. See also, United States v. Gomori*, 437 F.2d 312, 314 (4th Cir. 1971). The only requirement is that the results of the search itself are not necessary to support probable cause to arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S. Ct. 2556, 65 L. Ed. 2d 633 (1980).

Since there is no Fourth Amendment violation for misdemeanor arrests committed outside the presence of the arresting officer, *Penn v. Commonwealth*, 13 Va. App. 399 (1991), the blood test administered to Mr. Tipton by Trooper Pannell will qualify as a valid search incident to arrest if Trooper Pannell had sufficient facts available to him to meet the standards for a warrantless search incident to arrest required under the Fourth Amendment.

Examining the facts of the instant case, the court finds that Trooper Pannell was aware of sufficient facts to reasonably believe that a crime had been committed by Mr. Tipton. He had received a report of an accident from the dispatcher and was requested to obtain a blood test from a patient at the hospital who had been involved in the accident. Furthermore, upon interviewing the suspect, Trooper Pannell learned that Mr. Tipton admitted to being the driver of one of the vehicles in the accident and to having several beers that evening prior to driving his vehicle. Based on these facts, it was reasonable for Trooper Pannell to believe that Mr. Tipton had committed the offense of driving under the influence of alcohol.

In addition, the same facts could clearly have been the basis for a reasonable belief that evidence of the suspected crime would be found in an examination of the Defendant's blood alcohol level. Although he was initially given an incorrect name for the Defendant, the information transmitted to Trooper Pannell was sufficient to allow him to identify the Defendant in the hospital emergency room. Furthermore, the subsequent interview with the Defendant made it clear to Trooper Pannell that Mr. Tipton had been involved in an accident as a driver and that he had been drinking. The court finds these facts adequate to create a reasonable belief that evidence of the DWI offense would be obtained in an examination of the Defendant's blood.

Finally, Trooper Pannell reasonably believed that an immediate warrantless search was necessary in order to preserve the evidence of Mr. Tipton's blood alcohol level. It is well-known that blood samples must be taken as soon as possible after an accident in order to preserve their evidentiary value. *Schmerber*, 384 U.S. at 770–71, 86 S. Ct. at 1836. If Trooper Pannell could have ordered Mr. Tipton to stop metabolizing the alcohol he had consumed, a warrant might have been appropriate. However, such an order is clearly impossible. By ordering the blood test without a warrant, Trooper Pannell properly sought to preserve evidence of a possible crime which might otherwise have been lost through the passage of time.

Accordingly, this court finds that the constitutional requirements for probable cause have been met. Although Trooper Pannell correctly believed that he did not have legal authority to arrest Mr. Tipton under Virginia law, he had available to him sufficient facts to create probable cause to arrest Mr. Tipton under the Fourth Amendment. As a result, the blood test administered to Mr. Tipton may be characterized as a search incident to a constitutionally valid arrest, and since Mr. Tipton suffered no violation of his constitutional rights, the evidence obtained in his blood sample will not be excluded on those grounds.

### 3. *Exigent Circumstances*

Another exception to the warrant requirement occurs when there are exigencies in a situation which make exemption from the warrant requirements imperative. *United States v. Reid*, 929 F.2d 990, 993 (4th Cir. 1991). Such a situation typically arises in drunk-driving cases because the percentage of alcohol in the blood begins to diminish shortly after drinking. *Id.* Particularly in cases such as the one at bar, where time had to be taken to transport the suspect to the hospital, there is often no time to seek out a magistrate and secure a warrant.

Thus, where an officer has reason to believe that a driver involved in an accident might have been intoxicated and where the delay necessary to obtain a warrant threatens the destruction of the evidence, the "exigent circumstances" exception to the warrant requirement will allow a blood test to be administered without a warrant. *Id. See also Schmerber*, 384 U.S. at 770–71, 86 S. Ct. at 1835–36. This exception to the warrant requirement is justified on policy grounds by the Commonwealth's need to combat drunk driving on the one

hand and by the fact that blood tests of this sort have become almost routine in our everyday life and therefore represent a minimal intrusion on the defendant's privacy interests. *Winston v. Lee*, 470 U.S. 753, 762, 105 S. Ct. 1611, 1617, 84 L. Ed. 2d 662 (1985).

As noted previously, the facts known to Trooper Pannell at the time the blood test was administered were sufficient to lead him to reasonably believe that Mr. Tipton had been driving while intoxicated. Furthermore, the impermanent nature of the evidence contained in Mr. Tipton's blood clearly made it imperative that Trooper Pannell obtain the sample without undue delay. As a result, this court finds that the blood test, although obtained without a warrant, was nevertheless reasonable under the Fourth Amendment, under the "exigent circumstances" exception.

### 4. *Schmerber Limits*

No discussion of a non-consensual blood test administered to a defendant would be complete without examining the procedural limits placed on law enforcement officers by the Supreme Court. Under *Schmerber*, a warrantless blood test will be upheld only if the process is: (1) a "reasonable one" which is (2) "performed in a reasonable manner." 384 U.S. at 771, 86 S. Ct. at 1836. No evidence was introduced that the blood test given to Mr. Tipton was unexceptional, and a test will typically not be an unreasonable one so long as the defendant does not object for religious or health-related reasons. *Id.* Such was not the case here, as Mr. Tipton clearly expressed a preference for a blood test over a breath test. Furthermore, a blood test will have been performed in a reasonable manner if it was taken by an attending physician according to acceptable medical practices. *Id.* No evidence was presented to indicate that routine medical practices were not followed by qualified personnel in Mr. Tipton's case. The court finds that the procedural limitations of *Schmerber* were satisfied.

### Conclusion

In conclusion, this court finds that the blood test given to Mr. Tipton, although performed without a warrant and without valid consent, was nevertheless reasonable under the Fourth Amendment, due to both the exigent circumstances exception and the search incident to a constitutionally valid arrest exception. Although Trooper Pannell could not have made a valid arrest of Mr. Tipton under Virginia

law, it is clear that there was no violation of Mr. Tipton's constitutionally-protected rights. Accordingly, the court finds that exclusion of the evidence obtained in the blood test would be inappropriate.