COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Elder and Annunziata
Argued at Salem, Virginia


STACEY JAY BROWN
                                    MEMORANDUM OPINION[*] BY
v.   Record No. 2512-94-3           JUDGE ROSEMARIE ANNUNZIATA
                                         AUGUST 27, 1996
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF BUENA VISTA
                      Thomas H. Wood, Judge

          W. T. Robey, III, for appellant.

          Steven A. Witmer, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.



     Stacey Jay Brown appeals his conviction for driving under

the influence of alcohol.  He contends that he was stopped at a

police roadblock in violation of his Fourth Amendment rights.  We

affirm his conviction.

     According to the statement of facts, see Rule 5A:8(c), on

August 19, 1994, Officer A. J. Panebianco stopped Brown at a

roadblock on Route 501 in the City of Buena Vista.  Panebianco

noticed that Brown exhibited evidence of alcohol consumption and

arrested him after he failed several field sobriety tests.

Brown's blood alcohol concentration registered .11% on a

breathalyzer.

     The statement of facts also recited that on August 8, 1994,

the police chief informed Panebianco in writing that he would be

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

required to operate a checkpoint to look for intoxicated drivers "on Rt. 501 in the City of Buena Vista." Panebianco testified that the roadblock had been established pursuant to the Buena Vista Police Department manual on traffic stops. Section I-B of the manual requires that all checkpoint locations be selected from a list of approved sites. Section I-C requires a primary and secondary site be designated for each day/night of the scheduled checkpoint.

Panebianco did not receive written or oral instructions which expressly stated where the primary or secondary checkpoint was to be situated that evening. However, Panebianco testified that there were only two approved checkpoints in the City of Buena Vista. All officers knew that the "Route 501" location referred to a site located near the old Blue Bird plant. The second checkpoint, known as the "Route 60" location, was in front of the Mormon church near the western limits of the city.

> The manual also states as follows:
> Systematic vehicle stops are acceptable if every car is stopped. Also accepted are spot checks with some degree of uniformity; for example, every fo[u]rth car is stopped. The frequency of vehicles stopped will be decided by the supervisor; for example, every third car, or as the situation dictates.

In the present case all vehicles were stopped.

In Virginia "roadblock[s] must be carried out pursuant to a plan or practice which is explicit, contains neutral criteria, and limits the conduct of the officers undertaking the

- 2 -

roadblock." Simmons v. Commonwealth, 238 Va. 200, 202-03, 380 S.E.2d 656, 658 (1989). These requirements "ensure that an individual's expectation of privacy is not subjected to arbitrary invasion solely at the unfettered discretion of police officers in the field." Hall v. Commonwealth, 12 Va. App. 972, 973, 406 S.E.2d 674, 675 (1991). Prior cases concerning roadblocks have focused upon the degree of discretion granted an officer in determining the validity of the stop. In Simmons, the Virginia Supreme Court found a roadblock violated the Fourth Amendment because the officers had total discretion over the establishment, location, and duration of the roadblock. 238 Va. at 204, 380 S.E.2d at 659. The Court ruled that officers on the scene may not establish the system for stopping vehicles. See also Lowe v. Commonwealth, 230 Va. 346, 352, 337 S.E.2d 273, 277 (1985), cert. denied, 475 U.S. 1084 (1986); Hall, 12 Va. App. at 975-76, 406 S.E.2d at 676; Brown v. Commonwealth, 20 Va. App. 21, 25-26, 454 S.E.2d 758, 759-60 (1995). Brown contends the checkpoint violated the Fourth Amendment because officers at the scene had discretion as to where to place the checkpoint and as to which vehicles would be stopped.

Viewed in the light most favorable to the Commonwealth, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), the evidence proved that the chief of police's directive to establish a site "on Rt. 501 in the City of Buena Vista" referred to only one location. Panebianco did not have

discretion to establish a checkpoint anywhere along Route 501 because the old Blue Bird site was the only permissible site. The only other approved location, the "Route 60" site, was precluded when the chief of police directed the checkpoint be placed at the Route 501 site.

When considered with the police manual and Panebianco's personal knowledge of the police department's established practice, the written instructions at issue are not ambiguous or vague. They directed the officer to place a checkpoint at a specific site near the old Blue Bird plant. Unlike the officers in Simmons, Panebianco did not have discretion to determine the location of the checkpoint. See 238 Va. at 204, 380 S.E.2d at 659. Moreover, the failure to identify a secondary site, as required by the police department manual, did not effectively make the location of the checkpoint a matter of discretion to be decided by the police officer in the field.

Finally, according to the police manual, the supervisor in Buena Vista decided the "frequency of vehicles checked." The manual approves a system under which every car is stopped. Lieutenant B. D. Smith, the on-the-scene supervisor of the checkpoint, complied with these police department procedures and directed that every car be stopped. In considering the method of roadblock checks which could meet constitutional requirements, the United States Supreme Court recognized that "[q]uestioning of all incoming traffic at roadblock-type stops is one possible

alternative."  <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979).

The record establishes that the stop in this case was reasonable, was in accord with the established plan, and, thus, comported with the provisions of the Fourth Amendment. Accordingly, we affirm the conviction.

<u>Affirmed.</u>

Benton, J., dissenting.

"Stopping an automobile and detaining the occupants at a roadblock constitutes a seizure under the fourth amendment of the United States Constitution." Simmons v. Commonwealth, 238 Va. 200, 202, 380 S.E.2d 656, 658 (1989). Because the record reveals that the officers were not "using an objective, nondiscretionary procedure" for determining the location of the roadblock and who would be stopped, I would reverse the conviction. Id. at 204, 380 S.E.2d at 659.

Route 501 travels through the City of Buena Vista for at least three miles. In a written memorandum the chief of police directed Officer Panebianco to establish a sobriety checkpoint "on Rt. 501 in the City of Buena Vista." Neither the memorandum nor any other writing established a specific location. Panebianco's testimony that all officers understood that "Route 501" referred to a particular location near the old Blue Bird plant did not prove constitutionally sound criteria.

This Court and the Supreme Court have upheld sobriety checkpoints as constitutional provided they are properly established. "[I]n order to ensure that 'an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field . . . [seizures at roadblocks] must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers.'" Crandol v. Newport News, 238 Va. 697,

700, 386 S.E.2d 113, 114 (1989) (quoting Lowe v. Commonwealth, 230 Va. 346, 350, 337 S.E.2d 273, 276 (1985), cert. denied, 475 U.S. 1084 (1986)).

In Simmons, two police officers established a sobriety checkpoint without any direction or an existing plan. The officers exercised discretion as to where and when to establish the checkpoint. They decided to stop every vehicle. "Without evidence that the troopers were using an objective, nondiscretionary procedure, [the Supreme Court] h[e]ld that the . . . stop [of the defendant at the checkpoint] violated the Fourth Amendment." Simmons, 238 Va. at 204, 380 S.E.2d at 659.

Neither the police chief's memorandum nor Panebianco's testimony proved that the officers on duty could not exercise their own discretion as to the location of the checkpoint. On its face, the chief of police's memorandum allowed a roadblock anywhere along Route 501. A general understanding among officers does not transform the memorandum into an "explicit plan or practice" for fourth amendment purposes. Id. at 204, 380 S.E.2d at 658. The Commonwealth failed to prove that the officers established the checkpoint on Route 501 according to an existing plan or specific instructions from the proper authority. Indeed, the manual requires that "[a]ll check point sites . . . will be selected from a list of approved check point sites." The evidence proved that no such list existed or was used.

This Court has recognized that discretion need not be

totally "unbridled" or "unfettered" to constitute a fourth amendment violation.  Hall v Commonwealth, 12 Va. App. 972, 975, 406 S.E.2d 674, 676 (1991).  Even though officers may receive some instructions regarding the establishment of a checkpoint, they may still exercise discretion in violation of the fourth amendment.  Without documented evidence of specific, designated checkpoint locations, the evidence failed to prove that the officers relied on an "objective, nondiscretionary procedure" in deciding where to establish the checkpoint.  Simmons, 238 Va. at 204, 380 S.E.2d at 659.

Furthermore, the evidence proved that the plan as denoted in the chief of police's memorandum did not conform with the manual's requirement that a primary and secondary checkpoint be identified.  According to the manual, "[f]or each day/night that the check point is scheduled, there will be a primary and secondary site chosen."  The police department did not choose a secondary site and no specific location on Route 501 was ever labeled the primary site.

According to the manual the "frequency of vehicles checked will be decided by the supervisor."  The manual does not state whether the supervisor must be an officer assigned to the checkpoint or someone back at the stationhouse.  The evidence proved that at the scene, the officer in charge of the roadblock exercised his discretion by electing the frequency by which to stop the vehicles.  This on-the-scene decision-making is just the

type prohibited by Simmons. "A statement that the [officers] followed standing operating procedure in stopping every car is not sufficient to establish that an explicit plan or practice existed regarding roadblock or check point procedures." 238 Va. at 204, 380 S.E.2d at 659. Nothing prevented the supervisor from ordering that every third car be stopped and then switching to some other frequency of stop.

Because the Commonwealth's evidence proved that the Buena Vista officers were never directed as to where on Route 501 to locate the checkpoint or where the primary and secondary sites were to be established, or which vehicles to stop. I would "hold that the plan unnecessarily left the [police officers] with such broad discretion that it was subject to abuse." Hall, 12 Va. App. at 975, 406 S.E.2d at 676. Accordingly, under these circumstances, I believe that the procedure invaded the public's fourth amendment right, and, therefore, I would reverse the conviction.