COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Bumgardner
Argued at Richmond, Virginia


MICHAEL L. HAMLIN, S/K/A
 MICHAEL LEON HAMLIN
                                   MEMORANDUM OPINION* BY
v.    Record No. 1279-99-2         JUDGE LARRY G. ELDER
                                        APRIL 25, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                  Oliver A. Pollard, Jr., Judge

          Mary K. Martin, Senior Assistant Public
          Defender (Office of the Public Defender, on
          brief), for appellant.

          Leah A. Darron, Assistant Attorney General
          (Mark L. Earley, Attorney General; Shelly R.
          James, Assistant Attorney General, on brief),
          for appellee.


     Michael L. Hamlin (appellant) appeals from his bench trial

conviction for possession of cocaine.  On appeal, he contends

the trial court erroneously denied his motion to suppress

because the scope of the arresting officer's search of his

person exceeded the scope of his consent and violated the Fourth

Amendment.  We hold the officer's search was within the scope of

the consent given, and we affirm appellant's conviction.

---

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

FACTS

Appellant was arrested for possession of cocaine and moved to suppress the evidence as the product of an illegal search.

The evidence adduced at the suppression hearing, viewed in the light most favorable to the party prevailing below, was as follows:

While on patrol in his police vehicle shortly after 8:00 p.m. on September 29, 1998, Officer Keith Schilke saw appellant and a woman standing in the middle of the street. He approached the pair and asked them "how they felt about narcotics in the area." He also asked them if they minded talking to him, and they said they did not. Schilke asked them for identification, and both provided it to him. He spoke first to the woman and asked her for consent to search her person. She declined and asked to leave. Schilke returned her identification and told her she could go, and she left.

Schilke then turned his attention to appellant. Schilke testified on direct examination that he asked appellant "if I could search his person, if he had any illegal weapons or narcotics or anything like that on his person." On cross-examination, Schilke testified that he asked appellant if he could pat him down for weapons, that the initial pat-down was for weapons for safety. Appellant consented. After completing the weapons pat-down, Schilke then asked appellant if he had

-

anything in his pockets and if Schilke could search them. Schilke initially testified that he asked appellant if he had any illegal contraband in his pockets. He later admitted that, although this question was part of his usual procedure, he could not recall whether he asked appellant specifically about narcotics or anything else. Appellant again consented to Schilke's request to search.

While searching appellant's pockets, Schilke removed an empty cigarette pack which was folded up. Schilke testified that the pack felt like an empty pack of cigarettes and contained nothing that he suspected to be a weapon. When he opened the pack, he found two clear "zips" containing an off-white residue which proved to be cocaine.

The trial court denied the motion to suppress, reasoning as follows:

> There doesn't seem to be any disagreement that there were two people there, that the officer asked permission to search the female, she said no, and then she was permitted to leave. . . . This was in [appellant's] presence, so it can't be argued that he wasn't aware of these circumstances. One person refused any further contact and said she didn't want to be searched, and she was given her ID and left, no problem.
> He then turns to [appellant] and the mention of the pat down for weapons, and he does that, he finishes that. Then he said, "Do you mind if I go in your pockets?" [Appellant] has to know that this was beyond the pat down . . . search for weapons. It's pretty obvious. And he says, "No problem,"

-

> knowing all the time that the female had
> said no and was permitted to leave.

The trial court convicted appellant of the charged offense and sentenced him to a two-year suspended sentence.

## II.

## ANALYSIS

At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights. See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989); Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995). On appeal, we view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1659, 134 L. Ed. 2d 911 (1996)). However, we review de novo the trial court's application of defined legal standards to the particular facts of the case. See Shears v. Commonwealth, 23

-

Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); see also Ornelas,

517 U.S. at 699, 116 S. Ct. at 1659.

"[T]he Fourth Amendment . . . protects people from

unreasonable government intrusions." United States v. Chadwick,

433 U.S. 1, 7, 97 S. Ct. 2476, 2481, 53 L. Ed. 2d 538 (1977).

"A consensual search is reasonable if the search is within the

scope of the consent given." Grinton v. Commonwealth, 14 Va.

App. 846, 850, 419 S.E.2d 860, 862 (1992). The standard for

measuring the scope of an individual's consent under the Fourth

Amendment is

> "objective" reasonableness-what would the
> typical reasonable person have understood by
> the exchange between the officer and the
> suspect? . . . The scope of a search is
> generally defined by its expressed
> object. . . . A suspect may, of course,
> delimit as he chooses the scope of the
> search to which he consents. But if his
> consent would reasonably be understood to
> extend to a particular container, the Fourth
> Amendment provides no grounds for requiring
> a more explicit authorization.

Florida v. Jimeno, 500 U.S. 248, 251-52, 111 S. Ct. 1801,

1803-04, 114 L. Ed. 2d 297 (1991). "The scope of [the] search

may be further defined during the course of the search by the

passive acquiescence of the person whose property is being

searched." Grinton, 14 Va. App. at 851, 419 S.E.2d at 863.

"Both the presence of consent to search and any related

limitations are factual issues for the trial court to resolve

-

after consideration of the attendant circumstances." Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996).

We applied these principles in Bolda v. Commonwealth, 15 Va. App. 315, 423 S.E.2d 204 (1992). Bolda was a passenger in a vehicle whose operator was arrested for driving while intoxicated. See id. at 316, 423 S.E.2d at 205. The arresting officer then asked Bolda "'if he was carrying any guns, knives, weapons . . . or anything on his person.'" Id. Bolda said he was not and consented to the officer's request to search Bolda's person. See id. The officer did not recall making any additional reference to weapons when he asked to conduct the search but said it was possible he made such a reference. See id. In a subsequent pat-down, the officer felt a substance which was "kind of hard" and "felt like plastic on the outside." See id. He removed the item from Bolda's pocket and discovered it was a rolled up baggie containing a psilcyn mushroom. See id.

Based on these facts, we held that "[t]he method and order in which [the officer] posed his questions to Bolda implied only a concern about weapons" such that it was unreasonable for the officer to conclude that Bolda had consented to a general search. See id. at 317, 423 S.E.2d at 206.

> Thus, Bolda's response could only reasonably
> have been related to the scope of the
> request. Significantly, [the officer]
> himself testified that it was possible he
> asked Bolda if he could search only for

-

> weapons.  In addition, [the officer] did not testify that he ever mentioned drugs or other contraband in his questioning of Bolda.

Id.  Ultimately, we held that "[t]hese circumstances prove[d] an implicit limitation on Bolda's consent, limiting [the officer] to a search only for weapons."  Id.  Because the only reason the officer articulated for examining the article was that he believed it might have been a weapon and because it was clear the item was not a weapon once he removed it from Bolda's pocket, we held that he lacked authority to unroll the baggie and examine its contents.  See id. at 318, 423 S.E.2d at 206.

Appellant's case is distinguishable from Bolda.  First, in appellant's case, it is undisputed that Officer Schilke mentioned narcotics when he first approached appellant and his companion, asking them "how they felt about narcotics in the area."  Second, Bolda involved only one search, preceded by the questions whether he had any weapons in his possession and whether the officer could search his person.  In appellant's case, by contrast, the trial court found that the officer conducted two searches, and the evidence, viewed in the light most favorable to the Commonwealth, supports this finding.  Before the first search, the officer asked appellant if he could pat him down for weapons, and he completed the pat-down search without finding anything.  Before the second search, the officer asked appellant if he could search his pockets and did not state

-

any specific category of items for which he was looking. It was within the authority of the trial court, as the finder of fact, to determine that a reasonable person in appellant's situation would conclude that the weapons search was over when the pat-down was completed. It also was within the court's authority to find that the request to "go in [appellant's] pockets" was a request to perform a more generalized search and that appellant's initial consent to such a search, coupled with his failure to object as the officer removed and examined the cigarette pack, were sufficient to render the search reasonable and the resulting contraband admissible. See United States v. Espinosa, 782 F.2d 888, 892 (10th Cir. 1986) ("Failure to object to the continuation of the search . . . may be considered an indication that the search was within the scope of the consent given."), quoted with approval in Lawrence v. Commonwealth, 17 Va. App. 140, 146, 435 S.E.2d 591, 594 (1993).

For these reasons, we hold the trial court did not err in denying the motion to suppress, and we affirm appellant's conviction.

Affirmed.

-