COURT OF APPEALS OF VIRGINIA

Present: Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia

CHRISTIAN MICHAEL LARSEN

v. Record No. 1096-00-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE G. STEVEN AGEE
MARCH 27, 2001

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James F. Ingram, Judge

Joseph R. Winston, Special Appellate Counsel (Public Defender Commission, on brief), for appellant.

Amy L. Marshall, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Christian Michael Larsen (Larsen) was convicted and sentenced in a bench trial in the Circuit Court of the City of Danville for driving after having been declared a habitual offender, second or subsequent offense, in violation of Code § 46.2-357(B)(3). He appeals the conviction averring that the roadblock employed to check his license and vehicle registration violated the Fourth Amendment of the United States Constitution. Therefore, Larsen argues, the trial court should have suppressed the evidence gathered as an illegal search and seizure. For the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reasons set forth below, we affirm the trial court's denial of the motion to suppress.

## I.

## Background

On December 2, 1999, Lt. J.W. Smith of the City of Danville Police Department supervised a traffic checkpoint at the intersection of Stratford Place and Westhampton Avenue from 9:00 p.m. to 10:00 p.m. The purpose of the checkpoint was to check and verify motorists' licenses and registrations and act upon any other violations which became apparent during the checkpoint.

The checkpoint was established and conducted pursuant to a plan designed by Lt. Smith and approved by his supervisor, Assistant Chief of Police Major Elliott, on November 24, 1999. The police department found the checkpoint necessary because the city had experienced citywide problems with people driving without a license. Lt. Smith chose the particular location because it was (1) a fairly wide street, (2) well lit, (3) well traveled and (4) a good location for the safety of his officers.

As provided by the plan, Officers Chaney, Crews, Brooks and Dalton set up the roadblock just prior to 9:00 p.m., using their marked police cars, orange cones and flares to notify motorists of the checkpoint. The plan provided that "in the event traffic becomes congested, it will be allowed to flow until clear. Then the checkpoint will resume." During the operation, however,

Lt. Smith never perceived the traffic to be congested, so the officers stopped all passing cars.

Just prior to 10:00 p.m., Officer Chaney stopped Larsen's vehicle at the checkpoint. Officer Chaney asked Larsen for his driver's license, whereupon Larsen informed the officer that he did not have a license. The officer then obtained Larsen's social security number and learned from the dispatcher that Larsen was a habitual offender. Officer Chaney then arrested Larsen for driving after having been declared a habitual offender. The charge was amended to a felony for a subsequent offense when it was determined Larsen had a prior conviction for the same offense.

At trial, Larsen made a motion to suppress all evidence derived from the stopping of his vehicle on the ground that his constitutionally protected right against unreasonable seizures was violated. The court denied the motion and found Larsen guilty as charged, giving rise to this appeal.

II.

Analysis

The stopping of a motor vehicle and detaining its operator at a roadblock or a checkpoint constitutes a seizure within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979); United States v. Martinez-Fuerte, 428 U.S. 543, 556 (1976); Crandol v. City of

Newport News, 238 Va. 697, 700, 386 S.E.2d 113, 114 (1989). Therefore, when reviewing the constitutionality of a checkpoint, an inquiry must be made into whether the checkpoint in question was a permissible invasion of the motorists' reasonable expectation of privacy. We evaluate the constitutionality of a traffic checkpoint according to established principles. "Persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." Prouse, 440 U.S. at 663. However, a state is "not preclude[d] from developing methods for spot checks that . . . do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." Id.

The issue before us is whether the seizure of Larsen under the circumstances of this checkpoint was unreasonable under the Fourth Amendment. Larsen contends the seizure was unreasonable due to its failure to meet the standards set forth in Brown v. Texas, 443 U.S. 47 (1979). We disagree.

The Supreme Court of the United States in Brown stated that the reasonableness of a checkpoint seizure depends on a balancing test in which the validity of such a seizure should be gauged. There must be a weighing of (1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity

of the interference with individual liberty and the individual's expectation of privacy. Upon considering these factors in this case, it is clear that the seizure was reasonable.

First, the checkpoint seizure was performed in the public interest as Danville had experienced a citywide problem with unlicensed drivers traveling on its roads. Proper licensure is a recognized vital interest of the public. In Simmons v. Commonwealth, 238 Va. 200, 203, 380 S.E.2d 656, 658 (1989), the Supreme Court of Virginia held "it is clear that the state has a vital interest in enforcing its motor vehicle laws regarding licensure and equipment." This holding that a grave public interest is advanced by a licensure checkpoint is supported by Prouse, 440 U.S. 648. There the U.S. Supreme Court stated

> [s]tates have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration and vehicle inspection requirements are being observed.

Id. at 658-59.

Finding the checkpoint's purpose to be permissible, we are now required to determine whether this particular checkpoint was a constitutionally impermissible invasion of Larsen's reasonable expectation of privacy. Simmons, 238 Va. at 202, 380 S.E.2d at 658.

> To avoid constitutionally impermissible infringements on privacy, the roadblock must be carried out pursuant to a plan or

> practice which is explicit, contains neutral criteria, and limits the conduct of the officers undertaking the roadblock. Such a plan serves to insure that one's "reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field."

Id. at 202-03, 380 S.E.2d at 658 (citation omitted). We find the checkpoint in question did not impermissibly infringe on a reasonable expectation of privacy.

The December 2, 1999 checkpoint in Danville was executed in compliance with a pre-approved plan and based on objective criteria. The checkpoint was designated by marked police cars, orange cones and flares; it was clearly visible to oncoming motorists. The field officers, assigned to the pre-arranged time and location, had no discretion concerning the particulars of the checkpoint, and were required to stop every passing car. The site of the operation was selected because it was a fairly wide street, well lit, well traveled and a good location for the safety of the field officers.

This operation was carried out pursuant to a plan which was explicit, contained neutral criteria and limited the conduct of the field officers. The fact that the creator of the plan, Lt. Smith, was present as a supervisor during the checkpoint operation does not render the checkpoint operation invalid. See Raymond v. Commonwealth, 17 Va. App. 64, 435 S.E.2d 151 (1993). The focus of the analysis is on the actions of Officer Chaney, who stopped Larsen, and as previously stated he and his fellow

field officers exerted no discretion in the planning or execution of the operation.

Accordingly, we hold that the Danville checkpoint did not violate Larsen's Fourth Amendment rights and the trial judge correctly denied the motion to suppress. Larsen's conviction is affirmed.

Affirmed.