COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick,[*] Judge Elder and
          Senior Judge Duff
Argued at Alexandria, Virginia


BEVERLY ENGLISH CROUCH
                                        OPINION BY
v.   Record No. 1917-96-4   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                      DECEMBER 23, 1997
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                    H. Selwyn Smith, Judge Designate

              Roger A. Inger (Massie, Inger & Iden, P.C.,
              on brief), for appellant.

              Marla Graff Decker, Assistant Attorney
              General (James S. Gilmore, III, Attorney
              General, on brief), for appellee.


     Beverly English Crouch (appellant) was convicted in a bench

trial of driving while under the influence of alcohol in

violation of Code § 18.2-266.  On appeal, he argues that the

trial court erred in denying his motion to suppress the results

of his breath analysis because the traffic checkpoint at which he

was stopped was improperly established.  Finding no error, we

affirm the trial court.

     State Trooper Michael Hodges established the disputed

checkpoint on October 6, 1995, in response to an assignment he

received the "beginning of his work week" requiring him to

conduct a traffic checking detail some time during that "work

week."  Hodges' supervisor directed him to set up the detail at

_____
       [*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

the intersection of Routes 29 and 211. The assignment did not specify a date or time for the detail within the week, nor did it indicate whether the checkpoint should stop eastbound or westbound traffic.

The State Police Traffic Checking Plan provides guidelines for establishing a checkpoint. Under the plan, field officers must obtain pre-approval from a supervisor before beginning a detail. The plan also provides that vehicles "will not be stopped on a discretionary basis," and limits the duration of a traffic checking roadblock to between thirty minutes and two hours. The plan contains additional provisions, including requirements for record keeping and site selection for roadblocks. The intersection of Routes 29 and 211 was one of about twenty Fauquier County sites approved under these requirements.

Just before 7:00 p.m. on October 6, 1995, Trooper Hodges determined that "weather conditions were appropriate and that Trooper Downs was available to assist" him with the checkpoint. He called his dispatcher and obtained the required approval to begin the assigned roadblock. The traffic checking detail paperwork indicates that Sergeant Reynolds gave "verbal permission" to proceed. At approximately 7:00 p.m., Troopers Hodges and Downs established the traffic checkpoint on the eastbound side of Route 211. At about 7:15 p.m., appellant stopped his vehicle at the checkpoint. After observing the odor

2

of alcohol "emanating from the defendant," Trooper Hodges asked him to perform a series of "field sobriety tests." Based upon the results of those tests and a preliminary breath analysis, the defendant was arrested for driving under the influence of alcohol. A subsequent breath analysis revealed a blood alcohol concentration of 0.12 grams/210 liters.

We evaluate the constitutionality of a traffic checking roadblock according to established principles. "Persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." Delaware v. Prouse, 440 U.S. 648, 663 (1979). However, "[t]his holding does not preclude [a state] from developing methods for spot checks that . . . do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." Id.

> In Virginia it is well settled that
> "[t]o ensure that an individual's expectation
> of privacy is not subjected to arbitrary
> invasion solely at the unfettered discretion
> of police officers in the field, seizures at
> roadblocks must be carried out pursuant to
> plans embodying explicit, neutral limitations
> on the conduct of the individual officer."

Brown v. Commonwealth, 20 Va. App. 21, 24, 454 S.E.2d 758, 759 (1995) (quoting Hall v. Commonwealth, 12 Va. App. 972, 973, 406 S.E.2d 674, 675 (1991)). See Simmons v. Commonwealth, 238 Va. 200, 202, 380 S.E.2d 656, 657 (1989) (traffic checking roadblock

3

established "without any prior direction from . . . superiors and without an existing plan" held unconstitutional); Thomas v. Commonwealth, 22 Va. App. 735, 739, 473 S.E.2d 87, 89 (1996) (roadblock held unconstitutional because Commonwealth failed to present "evidence that the officers were using an objective, nondiscretionary procedure").

The validity of a checkpoint depends upon the amount of discretion remaining with the field officers operating the roadblock. Clearly, roadblocks are constitutional when conducted according to explicitly neutral plans which completely eliminate the discretion of the operating officers.[1] See Raymond v. Commonwealth, 17 Va. App. 64, 435 S.E.2d 151 (1993) (sobriety checkpoint established according to a formal plan at a pre-arranged time and location which stopped all vehicles without discretion was valid); Crandol v. City of Newport News, 238 Va. 697, 701, 386 S.E.2d 113, 115 (1989) (roadblock found constitutional based on "proof of advance decisions by superior officers as to the time and location [and that the field officers] conducted the roadblock [according to] explicitly neutral criteria"); Lowe v. Commonwealth, 230 Va. 346, 352, 337 S.E.2d 273, 277 (1985) (sobriety checkpoint held constitutional

---

[1]Deviations by field officers from checkpoint guidelines may constitute sufficient discretion to invalidate the roadblock. See Brown v. Commonwealth, 20 Va. App. 21, 454 S.E.2d 758 (1995) (roadblock was held unconstitutional because troopers moved the checkpoint to the designated alternate location for unauthorized reasons).

4

where officer followed plan which "is safe and objective in its operation, employs neutral criteria, and does not involve standardless, unbridled discretion by the police officer in the field").

The issue before us is whether a field officer's control over the timing of the checkpoint constitutes unbridled discretion sufficient to render the checkpoint unconstitutional. In Hall v. Commonwealth, 12 Va. App. 972, 974, 406 S.E.2d 674, 676 (1991), the field officer had discretion to decide both the location and the timing for a roadblock. He "had the authority to select his checking detail from fifty-four pre-approved sites, and to decide exactly when to conduct the detail during the week his superiors had ordered him to do so." Id. He also was required to obtain his supervisor's approval, but not until after he completed the detail. Id. at 974, 406 S.E.2d at 675. "While his discretion may not have been totally [unbridled], the plan unnecessarily left the individual trooper with such broad discretion that it was subject to abuse," particularly because "Accomack County is not so large that fifty-four checkpoint stops constitute a significant limitation." Id. at 975, 406 S.E.2d at 676. We concluded that, as written, "the guidelines did not properly limit the officer's discretion" and that the seizure was unconstitutional. Id. at 973, 406 S.E.2d at 675.

The instant case differs from Hall in several respects. Although Trooper Hodges was allowed to designate the timing of

5

the traffic checking detail, he had no discretion to decide the location of the assigned roadblock,[2] and he was required to obtain approval from a supervisor <u>before</u> he began stopping vehicles.  The Commonwealth argues that Hodges' limited authority to determine the specific time of the roadblock during the designated work week does not constitute unbridled discretion.  We agree.  The need to evaluate weather conditions and determine the availability of other officers provides a reasonable basis for this procedure.  Hodges complied with the restrictions, which limited any potential for abuse.  His supervisor determined the site of the roadblock in advance.  Hodges could not stop any individuals who did not pass the intersection of Routes 29 and 211.  Also, Hodges checked "[a]ll vehicles, regardless of type," according to the guidelines.  Additionally, the checkpoint was operated for one hour, which was within the State Police Guideline limiting the duration of a checkpoint to between one-half hour and two hours.  Finally, Hodges was required to gain <u>pre-approval</u> of the roadblock from a supervisor who was not part of the detail.  Under these facts, we hold that the traffic checkpoint was properly established; the trooper exercised limited, supervised discretion under explicitly neutral guidelines.  For the foregoing reasons, the trial court is affirmed.

---

[2]We reject appellant's argument that Trooper Hodges' ability to choose which direction of traffic to stop gave him excessive discretion.  The designation of a specific pre-approved site for the detail was sufficient guidance with respect to location.

<u>Affirmed.</u>