COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Humphreys
Argued at Richmond, Virginia


WILLIAM WILKINS, JR.

MEMORANDUM OPINION[*] BY
v.    Record No. 2758-99-2        JUDGE ROBERT J. HUMPHREYS
                                       APRIL 17, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
James F. D'Alton, Jr., Judge

Charles R. Watson for appellant.

Thomas M. McKenna, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


William Wilkins, Jr. appeals his conviction for possession of cocaine with intent to distribute, following a conditional guilty plea. Wilkins contends that the trial court erred in failing to suppress evidence obtained as a result of the search of his vehicle, which occurred after he was stopped at a traffic checkpoint.

> When we review a trial court's denial of a
> suppression motion, "[w]e review the
> evidence in a light most favorable to . . .
> the prevailing party below, and we grant all
> reasonable inferences fairly deducible from
> that evidence." In our review, "we are
> bound by the trial court's findings of
> historical fact unless 'plainly wrong' or
> without evidence to support them." However,

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

> we consider <u>de</u> <u>novo</u> whether those facts
> implicate the Fourth Amendment and, if so,
> whether the officers unlawfully infringed
> upon an area protected by the Fourth
> Amendment.

<u>Harris v. Commonwealth</u>, 33 Va. App. 325, 330-31, 533 S.E.2d 18, 20 (2000) (citations omitted).

On February 10, 1999, Wilkins, who was driving his mother's vehicle, was stopped at a traffic checkpoint located at the corner of Harding and Ross Court Streets in the City of Petersburg, Virginia. Officer Chris Greenwell approached the driver's side window and asked Wilkins for his license and registration. Wilkins told Greenwell that he did not have a license. At that point, Greenwell recognized Wilkins and knew that his driver's license had been suspended. Greenwell asked Wilkins if the license was still suspended and Wilkins replied, "Yes."

Greenwell then noticed that the passenger in the car was making suspicious motions. He was sitting with his arms crossed, with his right hand under "his left armpit." When he reached for the glove box to look for the car registration, he kept his right hand in the same position, as if he was "concealing something." After a brief consent search in which a pill bottle containing cocaine was found under the driver's seat, Wilkins was arrested and charged with possession of a controlled substance with intent to distribute.

-

Prior to trial, Wilkins filed a motion to suppress the evidence seized from his vehicle, arguing that the stop and subsequent search of his vehicle were "without probable cause" and that the stop violated his Fourth Amendment rights because the roadblock was not undertaken pursuant to an "explicit plan or practice which limited the discretion of the officers conducting the roadblock."

The suppression hearing was held on August 16, 1999.[1]  The evidence presented established that the traffic checkpoint was scheduled by Sergeant Delores Randolph, supervisor of the Community Policing Unit and the Weed & Seed program of the Petersburg Police Department, pursuant to the City of Petersburg Bureau of Police Traffic & Sobriety Checkpoint Plan.  Although it was the "Weed & Seed" community policing unit that carried out the checkpoint, the Checkpoint Plan states the purpose of all traffic checkpoints conducted through the department as the following:

> [T]o enforce the operator license and
> vehicle registration laws, and to take
> appropriate action to all other violations
> of law.  Also for the purpose of inspecting
> the motor vehicle, as to its equipment and
> safe operation.

In accordance with the Checkpoint Plan, Randolph determined the time and location of the operation, as well as the number of

_____

[1] The hearing on the motion to suppress was heard by Judge Oliver A. Pollard, Jr.

-

officers assigned to work the checkpoint, on the first day of February 1999, as she schedules the time and location of each of the traffic checkpoints that are to be held in a given month.[2] This particular checkpoint was scheduled for February 10, 1999, at 7:00 p.m., at the location of Harding and Ross Court Streets. Randolph assigned several officers to work the checkpoint, and assigned Officer Ricardo Williams, the senior officer, as the "overseer" of the checkpoint.[3]  In addition, the on-duty sergeant at the police station acted as a "remote supervisor" and was to be contacted and informed of the commencement of the checkpoint.

Once Sergeant Randolph made these determinations, Officer Kevin Johnson, the Traffic Specialist for the Weed & Seed unit, completed an Operations Report/Order that informed the assigned officers of the location of the checkpoint, as well as the manner in which it was to be conducted.  The Operations Report did not contain the time at which the checkpoint was to begin.

As directed by the Operations Report and the schedule created by Sergeant Randolph, on the date of the checkpoint at approximately 7:00 p.m., the officers traveled to the site, placed orange traffic cones in the street to direct traffic

---

[2] The Commonwealth attempted to question Sergeant Randolph as to why that particular location was chosen.  However, Wilkins objected to the question as irrelevant.  The Commonwealth then withdrew the question.

[3] Randolph does not attend the checkpoints and is only contacted by the "overseer" of the operation if there are difficulties or problems.

through the check site, and placed a sign just before the checkpoint to alert motorists. The officers then stopped every car that passed through the checkpoint site and "request[ed] [a] drivers [sic] license and registration" of each driver.

At the conclusion of the operation at approximately 9:00 p.m. to 9:30 p.m., the team of officers had issued four seat belt summonses, made two felony non-drug arrests, and four drug arrests, including the arrest of Wilkins. Officer Williams provided these statistics to Sergeant Randolph, who then completed the Selective Enforcement Form, which is utilized to confirm that the various checkpoints comply with the Checkpoint Plan. Although not a specific requirement under the Plan, neither the Operations Report/Order, nor the Selective Enforcement Form, was signed by the officers who prepared them and/or the officers who reviewed them to ensure compliance with the Checkpoint Plan.

At the conclusion of the evidence presented during the hearing on the motion to suppress, Wilkins argued that the stop was not conducted in accordance with the department plan "in that one person had absolute discretion of when [it was] going to be held" and that this "unconstrained exercise of discretion" violated the Fourth Amendment. Wilkins also argued that the on-site supervisor had complete discretion as to the time to hold the checkpoint. The Commonwealth responded that the Checkpoint Plan met constitutional requirements and that it was

-

appropriately followed by the police department. The trial court found "that the plan for stops that the department had was adequate . . . [and] that the plan was substantially followed in this particular case."

At the trial of the matter, before a different judge, Wilkins entered a plea of guilty, conditioned upon his right to appeal the issue of the propriety of the checkpoint. Before making the plea, Wilkins renewed his motion to suppress, arguing for the first time that the "case law does not support implementation of road blocks to catch drug offenders." The Commonwealth responded that the trial court had already heard evidence on this matter and ruled that the department's Checkpoint Plan was adequate and that it had been complied with.

Without the benefit of hearing the evidence that had been presented during the suppression hearing, the trial court responded as follows:

> All right. I have no reason -- I think that's the criteria for the stops as long as they are not arbitrarily [sic] and they are set up pursuant to plan. Then I will overrule the motion and concur with the prior ruling.
>
>    *     *     *     *     *     *     *
>
> . . . [T]he suppression hearing will be incorporated as a part of this record. Objections are noted, and the Court will continue to sustain the ruling of the earlier hearing and deny the motion to suppress.

-

Wilkins then entered his conditional plea of guilty. The plea agreement, signed by both parties and accepted by the court, states the following concerning the issue preserved for appeal:

> This plea is subject to defendant preserving his motions and argument made on August 16, 1999 for appeal to the Virginia Court of Appeals and any subsequent Court.

Accordingly, Wilkins was convicted and sentenced to an active term of seven years in the penitentiary.

Wilkins' sole argument on appeal is that the trial court erred in failing to suppress the evidence because it was seized as a result of the Petersburg Police Department's alleged unconstitutional roadblock program "designed to snare drug offenders." However, Wilkins failed to properly preserve this issue for appeal.

"'A plea of guilty, accepted and entered by the court, is a conviction or the equivalent of a conviction of the offense to which it is directed, the effect of which is to authorize the imposition of the punishment prescribed by law on a verdict of guilty of the offense admitted. . . . It waives all defenses other than that no offense is charged.'" Peyton v. King, 210 Va. 194, 196, 169 S.E.2d 569, 571 (1969) (quoting Crutchfield v. Commonwealth, 187 Va. 291, 296, 46 S.E.2d 340, 342 (1948)). Nevertheless, Code § 19.2-254 allows for "conditional" pleas of guilty in certain cases. That section provides the following with regard to such pleas:

-

> With the approval of the court and the
> consent of the Commonwealth, a defendant may
> enter a conditional plea of guilty in a
> felony case, reserving the right, on appeal
> from the judgment, <u>to a review of the
> adverse determination of any specified
> pretrial motion</u>. If the defendant prevails
> on appeal, he shall be allowed to withdraw
> his plea.

Code § 19.2-254 (emphasis added).

Here, although Wilkins renewed his previous objection and argument on the motion to suppress, and raised a new argument concerning the nature of the checkpoint just before entering his plea at trial, he failed to preserve this new argument in his conditional guilty plea. As set forth above, the plea agreement specifically preserves only the pretrial motions and argument made on August 16, 1999. Wilkins raised no issue of the validity of the alleged "drug" checkpoint at that time. Accordingly, Wilkins has waived this issue on appeal. See <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (the Court of Appeals will not consider an argument on appeal which was not presented to the trial court; Rule 5A:18 applies to bar even constitutional claims).

Although Wilkins has not directly raised the arguments made during the August 16, 1999 suppression hearing on appeal, we find those arguments also without merit.

> [T]he legitimacy of a roadblock is
> determined by weighing the state's interests
> in establishing the roadblock against the
> potential intrusions on personal privacy.
> To avoid constitutionally impermissible

-

> infringements on privacy, the roadblock must be carried out pursuant to a plan or practice which is explicit, contains neutral criteria, and limits the conduct of <u>the officers undertaking the roadblock</u>.  Such a plan serves to insure that one's "reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion <u>of officers in the field</u>."

<u>Simmons v. Commonwealth</u>, 238 Va. 200, 202-03, 380 S.E.2d 656, 658 (1989) (citations omitted) (emphasis added).  Thus, "[t]he validity of a checkpoint depends upon the amount of discretion remaining with the field officers operating the roadblock.  Clearly, roadblocks are constitutional when conducted according to explicitly neutral plans which completely eliminate the discretion of the operating officers."  <u>Crouch v. Commonwealth</u>, 26 Va. App. 214, 218, 494 S.E.2d 144, 146 (1997).

These officers were working in accordance with an explicitly neutral plan, which they followed.  The Checkpoint Plan, which applied to the entire Petersburg Police Department, provided very specific guidelines pertaining to establishing roadblocks, including criteria for choosing locations, the mandated duration of the roadblocks, and the procedure to be followed during the roadblocks.  The Checkpoint Plan also required supervisors to establish the sites within the Plan criteria.  The officers were assigned to carry out the checkpoint at a location and time chosen by their supervisor and were provided with clear directions, by way of the Operations Report, as to how the checkpoint was to be conducted.

-

Contrary to Wilkins' argument, the fact that the Report did not contain the time of the operation does not establish that Officer Williams had "complete discretion" to choose the time of the operation.  First, neither the Checkpoint Plan nor the decisional case law on this issue requires the time to be stated on the Operations Report.  Furthermore, Williams testified that he was informed of the time for the operation by way of the monthly schedule prepared by Sergeant Randolph.  Sergeant Randolph testified that stating the time of the operation on the monthly schedule was her standard practice.  Thus, there is no evidence that Officer Williams had discretion to choose the time to begin this particular checkpoint.

Next, Wilkins' argument that Sergeant Randolph possessed unfettered discretion in establishing the location and time of the checkpoint is also without merit.  The Checkpoint Plan, which applies to the entire department, established specific criteria for Sergeant Randolph to follow.  Moreover, even if it had not, the constitutional safeguards in this arena are placed upon the discretion of the field officers undertaking the checkpoint.  Sergeant Randolph was the supervisor in charge of scheduling the checkpoints; she was not present during the operations, nor did she actively participate in them.

Finally, during the pendency of this appeal, the United States Supreme Court issued a decision holding that checkpoint programs with a primary purpose of interdicting illegal

-

narcotics violate Fourth Amendment protections against unreasonable search and seizure. <u>City of Indianapolis v. Edmond</u>, 121 S. Ct. 447, 457-58 (2000). The appellant, on brief, suggests that this case is dispositive of this appeal. However, the only way we may consider his argument in this regard is under the ends of justice exception to Rule 5A:18. We decline to do so because given this record, the appellant's argument is of no consequence. In determining whether a checkpoint program is barred under the theory appellant advances, <u>Edmond</u> requires courts to conduct an inquiry into the programmatic intent behind any challenged program. Here, the trial court considered the Checkpoint Plan and found that it was "adequate." Likewise, we find no evidence, either in the Checkpoint Plan or its implementation, of a programmatic purpose to interdict illegal drugs. Nor do we find in this record support for the proposition advanced in oral argument by Wilkins that the Weed & Seed program is a "drug enforcement" arm of the Petersburg Police Department.

Thus, for the reasons stated above, we affirm the ruling of the trial court.

<u>Affirmed</u>.

-