COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Clements and Agee
Argued at Salem, Virginia


TIMOTHY WAYNE PALMER
                                              OPINION BY
v.    Record No. 1416-00-3            JUDGE G. STEVEN AGEE
                                              JULY 10, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF PATRICK COUNTY
                Martin F. Clark, Jr., Judge

        Vikram Kapil, Senior Assistant Public
        Defender (Office of the Public Defender, on
        brief), for appellant.

        Shelly R. James, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     Timothy Wayne Palmer (the appellant) was convicted in the

Patrick County Circuit Court of forging a public document in

violation of Code § 18.2-168.  He was sentenced to serve a term of

ten days incarceration.  On appeal, the appellant contends the

trial court erred in finding the traffic checkpoint at which he

was stopped constitutional and permitting the evidence obtained

in the stop to be admitted at trial.  For the following reasons,

we affirm the decision of the trial court.

                          BACKGROUND

     The checkpoint at which the appellant was stopped was

established pursuant to a Virginia State Police statewide policy

entitled Memorandum #20, a "guideline that is used by all

members of the Virginia State Police."  The checkpoint was established by Troopers Bowling and Meade on May 29, 1999, from 6:00 p.m. to 6:30 p.m., on Goose Point Road, an access road to Fairystone State Park in Patrick County.  The purpose of the checkpoint was to stop "each and every vehicle that came through the site, checking for any violations on the vehicles, such as driver's license, equipment, [or] inspection."

Trooper Meade's superior directed him to conduct a traffic checking detail during the week of May 29, 1999.  On that date, Trooper Meade requested "permission from the First Sergeant" to set up the traffic checkpoint at a site the trooper selected from an existing list of state police pre-approved sites.  Under Memorandum #20, the requesting field officer must contact a supervising officer, provide the "site number," and indicate how many and which officers will participate, the time frame of the checkpoint and obtain permission to establish it.  The decision then rests with the First Sergeant whether to approve or disapprove the checkpoint at that particular site and time.

The First Sergeant gave approval to Trooper Meade's request to conduct the traffic checking detail at the Goose Point site. The appellant pulled up to the established checkpoint shortly after it was established.  He provided Trooper Bowling with the name "Danny Lee Palmer" or "Daniel Lee Palmer," the birth date of December 11, 1964 or 1968, and claimed he had a valid driver's license but did not have it with him in the car.

-

Trooper Bowling issued a summons to the appellant to appear in court on June 22, 1999, for failing to have an operator's license. The appellant signed the summons as "Danny Lee Palmer."

On June 22, 1999, the appellant failed to appear in court, and the case was continued until July 30, 1999. Trooper Bowling called "Danny" and informed him of the continuance and explained that all the appellant had to do was "show his driver's license to the clerk." On July 30, 1999, the appellant failed to appear, but an individual named "Daniel Palmer" was present. Trooper Bowling then went to Palmer Trucking where the appellant had informed him he worked. There, Trooper Bowling discovered that the person whom he had stopped on May 29, 1999, and who signed the summons as "Danny Lee Palmer," was actually Timothy Wayne Palmer.

Trooper Bowling then went before the Patrick County General District Court, on September 6, 1999, requesting that an arrest warrant be issued against the appellant for the forging of a public record, i.e., the traffic summons. The appellant was subsequently indicted by a grand jury in Patrick County in December 1999. Prior to his trial, the appellant filed a motion to suppress, requesting that any and all evidence resulting from the stop be suppressed because the checkpoint at which he was stopped was unconstitutional. After hearing the evidence and

-

counsel's arguments, the trial court denied the appellant's

motion, stating:

> [The trooper] did have pre-approved sites,
> which [the trooper] did utilize . . . . [He
> did] not [have] complete discretion . . . .
> [H]e doesn't have the absolute choice.  He
> doesn't have unfettered discretion, because
> first of all, he has got a narrow list, and
> then if his supervising officer says, "You
> can't do it there."  He does have to get
> - he has to have a pre-approved site and
> then a post-approval site, after his check.
> So there are two safeguards in place there
> and written guidelines . . . .  I think it
> was constitutionally assembled; that it was
> in compliance with the guidelines as stated
> in Virginia . . . .  I am not going to
> suppress the evidence.

The trial court subsequently found appellant guilty of forging a

public document in violation of Code § 18.2-168.

ANALYSIS

"In reviewing a trial court's denial of a motion to

suppress, 'the burden is upon [the defendant] to show that the

ruling, when the evidence is considered most favorably to the

Commonwealth, constituted reversible error.'"  McGee v.

Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997)

(en banc) (citation omitted).  While we are bound to review de

novo the ultimate questions of reasonable suspicion and probable

cause, we "review findings of historical fact only for clear

error[1] and . . . give due weight to inferences drawn from those

---

[1] "In Virginia, questions of fact are binding on appeal
unless 'plainly wrong.'"  McGee, 25 Va. App. at 198 n.1, 487
S.E.2d at 261 n.1 (citations omitted).

-

facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996) (footnote added).

The appellant contends the Patrick County checkpoint was constitutionally deficient under the Fourth Amendment based on the general precedent of seminal cases regarding roadblocks. Appellant cites the United States Supreme Court's decision in Brown v. Texas, 443 U.S. 47 (1979), and the Supreme Court of Virginia's decision in Lowe v. Commonwealth, 230 Va. 346, 337 S.E.2d 273 (1985), cert. denied, 475 U.S. 1084 (1986). He does not contest the trooper's actual conduct of the checkpoint, but only the decision to implement it. Specifically, the appellant argues that the establishment of the checkpoint was unconstitutional under our decision in Hall v. Commonwealth, 12 Va. App. 972, 406 S.E.2d 674 (1991). His rationale is that (1) the field officers (Troopers Meade and Bowling) failed to give their supervisor an independent, site specific law enforcement reason for conducting the checkpoint and (2) the supervisor's (the First Sergeant's) approval of the checkpoint request was "rubber stamping" or "remote control supervision," thereby rendering his supervisory approval illusory. We disagree and find the procedure used in this case by the state police to be constitutionally valid and supported by our decision in Crouch v. Commonwealth, 26 Va. App. 214, 494 S.E.2d 144 (1997).

-

It is indisputable that the stopping of a motor vehicle during a traffic checking detail constitutes a seizure within the meaning of the Fourth Amendment. See Lowe, 230 Va. at 349, 337 S.E.2d at 275. The stop must, therefore, be reasonable so as to minimize intrusion into an individual's privacy. As such, the United States Supreme Court has held that "the Fourth Amendment requires that a seizure must be based on specific, objective facts indicating that society's legitimate interests require the seizure of the particular individual, or that the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." Brown, 443 U.S. at 51. Law enforcement officers may not stop motorists in a wholly random and discretionary manner. However, the United States Supreme Court has stated in dicta, in Delaware v. Prouse, 440 U.S. 648 (1979), that a state is not precluded

> from developing methods for spot checks that
> involve less intrusion or that do not
> involve the unconstrained exercise of
> discretion. Questioning of all oncoming
> traffic at roadblock-type stops is one
> possible alternative.

Id. at 663. When the field officers' discretion is limited and the checkpoint is established pursuant to an explicit plan, a checkpoint to ensure and improve traffic safety is lawful. See Indianapolis v. Edmond, 531 U.S. 32 (2000).

-

"The validity of a checkpoint depends upon the amount of discretion remaining with the field officers operating the roadblock. Clearly, roadblocks are constitutional when conducted according to explicitly neutral plans which completely eliminate the discretion of the operating officers." Crouch, 26 Va. App. at 218, 494 S.E.2d at 146. In Crouch, we upheld the constitutionality of a checkpoint where it was established in response to an assignment given to a state trooper to conduct a traffic checking detail at a specific location in Fauquier County some time during the work week. The trooper selected the day and time, and the trooper received "verbal permission" to proceed.

> The Commonwealth argues that [the officer's] limited authority to determine the specific time of the roadblock during the designated work week does not constitute unbridled discretion. We agree. The need to evaluate weather conditions and determine the availability of other officers provides a reasonable basis for this procedure. [The officer] complied with the restrictions, which limited any potential abuse. His supervisor determined the site of the roadblock in advance.

Id. at 219-20, 494 S.E.2d at 146-47.

The primary distinction between Crouch and the case at bar is that Trooper Meade chose the site of the checkpoint from the list of pre-approved sites, as opposed to being directed to a specific site by his supervisor. This distinction does not

-

invalidate the checkpoint, because it does not create "unbridled discretion" in the field officer.

In Hall, 12 Va. App. at 975-76, 406 S.E.2d at 676, we found a checkpoint unconstitutional where the field officer alone chose the time and which of fifty-four pre-approved locations in a rural county at which to conduct a checkpoint. Our holding was based on the fact that the checkpoint was established without seeking and obtaining prior approval from a supervisor. The procedure in place at the time required the field officer to submit a post-checkpoint report "[u]pon completing the 'detail' . . . giving the place, time and duration of the 'checking detail,' the number of vehicles stopped, the number of warnings or summonses issued, and the number of arrests made and the reasons therefor." Id. at 974, 406 S.E.2d at 676. A supervisor then approved the post-checkpoint form. See id. We acknowledged that a "field officer may have a better idea which of the [several pre-approved locations] might be the best to set up the road checks and when they should be activated." Id. at 975, 406 S.E.2d at 676. However, because the plan required no prior approval, we held "that the plan unnecessarily left the individual trooper with such broad discretion that it was subject to abuse" and, thus, exceeded "the limitations permitted by law." Id. We further stated that if the trooper had communicated his plan to a supervisor "with the supervisor making the ultimate selection of the site and time[, t]his

-

procedure would ensure that officers would not have the unbridled authority to activate a particular check point to stop a particular individual."  Id. at 975-76, 406 S.E.2d at 676.

By seeking pre-checkpoint approval from his First Sergeant as to the time and location, "the ultimate selection of the site and time" was determined by Trooper Meade's supervisor, not Trooper Meade.  Coupled with the restriction of possible checkpoint sites to those only on the pre-approved list, the establishment of the checkpoint under "explicit neutral limitations on the conduct of individual officers" is achieved. Under these circumstances, the checkpoint was validly implemented.  Cf. Simmons v. Commonwealth, 238 Va. 200, 380 S.E.2d 656 (1989); Lowe, 230 Va. 346, 337 S.E.2d 273.  See also, LaFontaine v. State, 497 S.E.2d 367 (Ga. 1998) (where the determination as to the location of the roadblock was made by the field officers, but the decision to implement was made by a supervisor, the roadblock was constitutionally permissible as the field officers' discretion was minimal).

We find no merit to appellant's argument that the Commonwealth must demonstrate to the court independent site and time specific law enforcement reasons why this particular traffic checkpoint was established.  There is no authority for this argument, and we have never required such a showing where the neutral criteria and limitation of discretion factors are reflected.  See e.g., Crouch, 26 Va. App. at 217, 494 S.E.2d at

-

145 (nothing disclosed as to why the checkpoint was established).  The United States Supreme Court has stated that the judiciary's review role in Fourth Amendment cases involving checkpoints was "not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger. . . . [F]or purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and responsibility for, limited public resources, including a finite number of police officers."  Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 453-54 (1990).  Absent strong evidence of abuse or other similar good cause, which is absent in this record, we will not venture into law enforcement choices which properly reside with the law enforcement officers and their politically accountable superiors in the executive branch of government.

The constitutionality of a checkpoint hinges on the evaluation of the field officer's discretion in establishing the checkpoint and whether or not the execution of the checkpoint "involves standardless, unbridled discretion by the police officer in the field."  Lowe, 230 Va. at 352, 337 S.E.2d at 277. If the field officers' discretion is limited, and the field officers employ neutral criteria in stopping vehicles, the

-

checkpoint is constitutionally permissible, and we so hold in this case.

In Sitz, the United States Supreme Court upheld the use of a sobriety checkpoint procedure, and in the process rejected the respondents' argument "that there must be a showing of some special governmental need 'beyond the normal need' for criminal law enforcement . . . .'"  496 U.S. at 450.  As previously stated, checkpoints to ensure and improve traffic safety are lawful, and by making a selection from the pre-approved site list, the state police checkpoint at which the appellant was stopped was already designated as a site where the objective of traffic safety could be fostered.

Accordingly, the trial court did not err in finding the checkpoint constitutionally permissible and the evidence gathered admissible.  The appellant's conviction is affirmed.

Affirmed.