COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Humphreys and Millette
Argued at Chesapeake, Virginia


DANITA MALETHA WRIGHT
                                                          OPINION BY
v.        Record No. 1261-07-1              JUDGE LeROY F. MILLETTE, JR.
                                                          JULY 8, 2008
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                          Louis R. Lerner, Judge

        John E. Robins, Jr. (Office of the Public Defender, on briefs), for
        appellant.

        Karri B. Atwood, Assistant Attorney General (Robert F. McDonnell,
        Attorney General, on brief), for appellee.


       Danita Maletha Wright (Wright) was convicted in a bench trial of possession of cocaine

in violation of Code § 18.2-250.  Wright was sentenced to three years incarceration, with all time

suspended for a period of five years.  On appeal, Wright argues the trial court erred in denying

her motion to suppress a crack-cocaine pipe seized at a checkpoint in violation of her Fourth

Amendment rights. [1]  Wright claims her seizure at the checkpoint and the ensuing search of her

---

[1] The Fourth Amendment to the United States Constitution states:

        The right of the people to be secure in their persons, houses,
        papers, and effects, against unreasonable searches and seizures,
        shall not be violated, and no warrants shall issue, but upon
        probable cause, supported by oath or affirmation, and particularly
        describing the place to be searched, and the persons or things to be
        seized.

"Local law enforcement personnel are subject to the requirements of the Fourth Amendment
under the due process clause of the Fourteenth Amendment."  Lowe v. Commonwealth, 230 Va.
346, 348 n.1, 337 S.E.2d 273, 274 n.1 (1985) (citing Mapp v. Ohio, 367 U.S. 643, 655 (1961)).

vehicle were unconstitutional due to the use of a trained narcotics-detection dog that was not provided for in the checkpoint plan. For the following reasons, we affirm the decision of the trial court.

## I. BACKGROUND

On November 2, 2006, the Hampton Police Department set up a safety checkpoint on West Pembroke Avenue in the City of Hampton between the hours of 7:00 p.m. and 9:00 p.m. The checkpoint was established to check for drivers' licenses, defective equipment, and safety violations. The checkpoint plan stated that the supervisor, prior to conducting the checkpoint, should brief all officers involved with the checkpoint on various pertinent information, including "Operating Procedures for K-9 Corps." Additionally, the plan called for one supervisor, six patrol officers, and one cadet to operate the checkpoint, and for the patrol officers to stop all cars passing through the checkpoint.

At approximately 8:20 p.m., a vehicle driven by Wright was stopped at the safety checkpoint. Upon stopping Wright, Officer Jones noticed Wright's vehicle had a defective brake light. Pursuant to the checkpoint plan, Officer Jones advised Wright of the safety violation and ordered her to pull into the right-hand lane. While Officer Jones issued Wright a summons, Officer Barsness of the Department's K-9 unit ran his trained narcotics-detection dog around Wright's stopped vehicle. Officer Barsness was directed to run his dog only around vehicles pulled over on the right-hand side of the road, while their occupants awaited the preparation of a summons. The trained narcotics-detection dog alerted Officer Barsness to the presence of narcotics. Officer Barsness informed Officer Jones, who was still writing Wright's summons, that the dog had alerted on Wright's car. Officer Jones ordered the occupants in Wright's car to exit the vehicle and proceeded to search the occupants and the car. Inside the car, Officer Jones

discovered a purse containing a pipe for smoking crack cocaine. Wright admitted the purse

belonged to her. Officer Jones arrested Wright for possession of a controlled substance.

Wright made a pretrial motion to suppress the cocaine pipe and residue cocaine found in

the pipe, claiming the pipe was found pursuant to a search that violated her Fourth Amendment

rights. The trial court heard arguments on Wright's pretrial motion to suppress.[2] The trial court

denied Wright's motion to suppress the cocaine pipe, ruling:

> The purpose of traffic or these safety checks . . . is to detect
> violations of safety standards, expired license and that sort of
> thing. And . . . that there is such a strict protocol on how they are
> conducted is so that the officers cannot on their own randomly . . .
> or in any arbitrarily [sic] manner *stop* any vehicle for any reason.
> So they have a plan and it has to be a specific time length. It has to
> state how many cars have to be stopped. The sequence of the cars
> they are going to stop, every car, every other car, every third car,
> whatever and so forth. *And once the car is stopped* for a safety
> violation and is pulled over then the issue is if the dog is not
> mentioned in that safety check can you use a dog? . . . *I think the*
> *whole purpose of this safety check is to make sure that you're not*
> *randomly stopping or for arbitrary . . . purpose just any car that*
> *comes down the road.* Once the car is stopped and they are doing
> the -- writing the ticket because of the safety violation, then the car
> is already lawfully stopped. I think you can use the dog to sniff
> around . . . .

(Emphasis added). This appeal followed.

## II. ANALYSIS

On appeal from a trial court's ruling on a motion to suppress, "'the burden is upon the

[defendant] to show that the ruling, when the evidence is considered most favorably to the

Commonwealth, constituted reversible error.'" Shiflett v. Commonwealth, 47 Va. App. 141,

145, 622 S.E.2d 758, 760 (2005) (quoting McGee v. Commonwealth, 25 Va. App. 193, 197, 487

S.E.2d 259, 261 (1997) (*en banc*)). "[A] defendant's claim that evidence was seized in violation

---

[2] The Honorable William C. Andrews presided over the hearing on the motion to
suppress. The Honorable Louis R. Lerner presided over Wright's full trial.

of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." King v. Commonwealth, 49 Va. App. 717, 721, 644 S.E.2d 391, 393 (2006) (citing Ornelas v. United States, 517 U.S. 690, 691 (1996)). "Thus, 'we give deference to the factual findings of the trial court but independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements.'" Shiflett, 47 Va. App. at 145-46, 622 S.E.2d at 760 (quoting Jackson v. Commonwealth, 267 Va. 666, 673, 594 S.E.2d 595, 598 (2004)).

Wright argues her initial seizure at the City of Hampton checkpoint violated the Fourth Amendment because the plan did not explicitly authorize the use of a trained narcotics-detection dog and this omission led to Officer Barsness having "unfettered discretion." Brown v. Texas, 443 U.S. 47, 51 (1979) (holding a seizure is unconstitutional if it occurs as the result of "arbitrary invasions solely at the unfettered discretion of officers in the field" (citing Delaware v. Prouse, 440 U.S. 648, 654-55 (1979); United States v. Brignoni-Ponce, 422 U.S. 873, 882 (1975))). Wright also contends the subsequent search of her car at the checkpoint, having occurred due to an alert by a trained narcotics-detection dog, violated her Fourth Amendment protection against unreasonable searches and seizures.

As a preliminary matter, checkpoints with the primary objective of enforcing safety requirements are constitutional. Prouse, 440 U.S. at 658 (finding a checkpoint for examining motorists' license and registration was valid due to States' vital interest in highway safety); Palmer v. Commonwealth, 36 Va. App. 169, 172, 549 S.E.2d 29, 30 (2001) (holding the purpose of a checkpoint was valid when officers stopped vehicles to look for "any violations on the vehicles, such as drivers' license, equipment, [or] inspection").

"[T]he Fourth Amendment requires that a *seizure* . . . must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." Brown, 443

U.S. at 51 (citing Prouse, 440 U.S. at 663; United States v. Martinez-Fuerte, 428 U.S. 543, 558-62 (1976)) (emphasis added). It is well settled that *stopping* a vehicle at a police checkpoint constitutes *a seizure* within the meaning of the Fourth Amendment. Prouse, 440 U.S. at 653 (citing Martinez-Fuerte, 428 U.S. at 556-58; Brignoni-Ponce, 442 U.S. at 878; Terry v. Ohio, 392 U.S. 1, 16 (1968)). Officer Barsness of the K-9 unit had no involvement in stopping vehicles at the checkpoint and was directed to have his trained narcotics-detection dog only sniff those vehicles already stopped and pulled over due to a violation.

Only officers working within the checkpoint plan's strict guidelines stopped vehicles at the City of Hampton checkpoint. The guidelines were constitutionally sound as they were pre-approved, controlled the checkpoint's placement, imposed a two-hour time frame on the checkpoint, listed the specific officers assigned to the checkpoint, provided for an on-site supervisor, ordered pre-checkpoint briefing for all patrol officers, and required officers to stop every vehicle passing through the checkpoint. See Crandol v. City of Newport News, 238 Va. 697, 698-701, 386 S.E.2d 113, 113-15 (1989) (finding a checkpoint plan constitutional where the officers received advanced approval from superiors, there was on-site supervision of the officers, the officers received adequate training prior to conducting the checkpoint, and the officers were required to stop each vehicle that passed through the checkpoint); see also Lowe v. Commonwealth, 230 Va. 346, 350-53, 337 S.E.2d 273, 275-77 (1985) (holding a checkpoint valid where the time and location of the checkpoint were approved in advance by superior officers, the officers had adequate training, the officers were supervised at the checkpoint, and the officers were directed to stop every southbound vehicle); Palmer, 36 Va. App. at 178, 549 S.E.2d at 33 ("If the field officers' discretion is limited, and the field officers employ neutral criteria in stopping vehicles, the checkpoint is constitutionally permissible . . . ."). No unconstitutional seizure occurred at the City of Hampton checkpoint, as the officers directly

involved in *stopping* cars did not possess "unfettered discretion." Indeed, during appellate argument, Wright's counsel conceded that Wright was lawfully stopped and detained at the checkpoint while Officer Jones wrote a summons.

However, Wright also contends that the subsequent search of her vehicle, resulting from the trained narcotics-detection dog's alert, violated her Fourth Amendment rights. Illinois v. Caballes, 543 U.S. 405 (2005), governs our inquiry. In Caballes, an officer lawfully stopped a vehicle for speeding. Id. at 406. While the vehicle was pulled over and the officer was writing a ticket, a second officer arrived at the scene and walked around the vehicle with his trained narcotics-detection dog. Id. The dog alerted on the vehicle, wherein the officers' subsequent search revealed marijuana. Id. The Court held the Fourth Amendment does *not* require "reasonable, articulable suspicion to justify using a drug-detection dog to sniff a vehicle during a legitimate traffic stop . . . [o]fficial conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." Id. at 407-08 (quoting United States v. Jacobsen, 446 U.S. 109, 123 (1984)). Regarding the appellant's claim that the dog sniff amounted to an unconstitutional search of his car, the Court found "any interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that *only* reveals the possession of contraband 'compromises no legitimate privacy interest.'" Id. at 408 (quoting Jacobsen, 466 U.S. at 123). Therefore, the Court ruled, "the use of a well-trained narcotics-detection dog--one that 'does not expose noncontraband items that otherwise would have remained hidden from public view,' during a lawful traffic stop, generally does not implicate legitimate privacy interests." Id. at 409 (quoting United States v. Place, 462 U.S. 696, 707 (1983)); see also City of Indianapolis v. Edmond, 531 U.S. 32, 40 (2000) ("The fact that officers walk a narcotics-detection dog around the exterior of each car at the Indianapolis checkpoints does not transform the seizure into a search." (citing Place, 462 U.S. at 707));

Brown v. Commonwealth, 15 Va. App. 1, 6, 421 S.E.2d 877, 880-81 (1992) (*en banc*) ("Nothing in the Fourth Amendment prohibits a law enforcement officer from using trained canines to augment the sensory faculties bestowed on the officer at birth." (citing United States v. Lewis, 708 F.2d 1078, 1080 (6th Cir. 1983))).

Wright's Fourth Amendment protection against unreasonable searches was not violated because the trained narcotics-detection dog's sniff was not a search. The checkpoint was operated in a constitutionally valid manner, and all vehicles subject to the checkpoint were legally stopped. The seizure of Wright by Officer Jones was based on probable cause that she had committed a traffic infraction, and Wright's counsel conceded during appellate argument that the seizure was lawful. In accordance with Caballes, the subsequent canine sniff of Wright's vehicle did not prolong the time reasonably required by Officer Jones to write a summons due to the defective brake light. Additionally, we uphold the trial court's finding that the narcotics-detection dog's sniff and subsequent alert for drugs was sufficiently reliable to create the requisite probable cause necessary to permit a search of the vehicle and its passengers. Therefore, the narcotics-detection dog legally sniffed Wright's vehicle and the resulting search that uncovered the crack-cocaine pipe was constitutional.

### III. CONCLUSION

We hold the seizure of Wright and the search of her vehicle did not violate the Fourth Amendment's guarantee against unreasonable searches and seizures because the checkpoint plan was neutral and placed limits on the patrol officers' conduct, the detention of Wright by Officer Jones was based on probable cause due to the vehicle's defective brake light, the duration of the seizure was brief, spanning only the time reasonably required to write a summons, and the canine

sniff of Wright's vehicle by a well-trained narcotics-detection dog did not constitute a search within the meaning of the Fourth Amendment.

<u>Affirmed.</u>