COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia


MICHAEL ANTHONY DESPOSITO
                                                          OPINION BY
v.        Record No. 0849-11-2                   JUDGE ROBERT P. FRANK
                                                          JUNE 5, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

Charles C. Cosby, Jr., for appellant.

Gregory W. Franklin, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Michael Anthony Desposito, appellant, was convicted, in a bench trial, of driving after

having been declared an habitual offender, second or subsequent offense, in violation of Code

§ 46.2-357.  On appeal, he contends the trial court erred in denying his motion to suppress.

Specifically, he alleges the traffic checkpoint was invalid.  For the reasons stated, we affirm the

decision of the trial court.

BACKGROUND

Sergeant Drew Darby of the Hanover County Sheriff's Office supervised a traffic

checkpoint at which appellant was arrested on May 27, 2009.  Hanover County has a policy and

procedure directive addressing its checkpoint policy (the "Hanover plan").  The plan directs the

commander of the uniform operations to prepare a list of checkpoint sites.  It further provides

that the checkpoint "should normally be operated [for] no less than thirty (30) minutes"; that

"vehicles will not be stopped on a discretionary basis"; and the team leader "shall not participate in the actual stopping/screening of motorist[s]."[1]

Pursuant to the plan, Lieutenant Eppling, a supervisor, selected the specific site from the list appended to the plan and named Sergeant Darby as checkpoint supervisor. Lieutenant Eppling advised Darby to "run it during the lunchtime," with no specific hours given. Based on that directive, Sergeant Darby held a briefing at 11:00 a.m. and began the checkpoint at 11:10 a.m.. Darby stopped the checkpoint at 12:45 p.m., because most of his officers were occupied with other vehicles. Thus, he lacked the personnel needed to maintain the checkpoint. Darby had intended to stop at 1:00 p.m.

Acknowledging the plan only recited a minimum of 30 minutes but not a maximum, Darby testified that in the many checkpoints set up, "we've never gone over two hours, and that's – the general understanding is two hours."

During the checkpoint, in accordance with the Hanover plan, all vehicles were stopped. The officers had no discretion as to which vehicles were stopped.

Deputy Russell Snook testified that he operated the checkpoint. When appellant drove into the checkpoint, Snook asked appellant for his operator's license. Appellant handed Snook a Virginia identification card and said he left his operator's license at home. A DMV check revealed that appellant was an habitual offender.

Appellant filed a motion to suppress, challenging the constitutionality of the checkpoint. He argued at the suppression hearing, as he does on appeal, that the open-ended time frame (a minimum of 30 minutes without setting forth an upper limit) and the "lunchtime" time frame afforded the officers too much discretion.

---

[1] We recite only those topics of the plan that are germane to the analysis.

The trial court found it was not necessary for there to be a maximum limit on the duration of the checkpoint, reasoning that an open-ended operation does not allow the field officers to target specific individuals. The 30-minute minimum duration mandated by the plan was intended, the trial court found, to prevent the police from conducting a "rolling checkpoint," thus avoiding targeting specific individuals.

The trial court denied the motion to suppress.[2] This appeal follows.

ANALYSIS

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980)). Although we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we "review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Ornelas v. United States, 517 U.S. 690, 699 (1996).

Appellant's challenge to the validity of the checkpoint is limited to two points: (1) the supervisor's direction that the checkpoint should be conducted "during the lunchtime" leaves the officers with unbridled discretion as to the time of operation; and (2) the plan is flawed because while it requires a 30-minute minimum operational duration, the plan does not establish a maximum time, thus allowing the officers at the checkpoint to determine the duration of the operation. These omissions, appellant contends, render the checkpoint constitutionally unsound, thus violating his Fourth Amendment rights.

_____

[2] The trial court did not address the "lunchtime" argument.

- 3 -

"As a preliminary matter, checkpoints with the primary objective of enforcing safety requirements are constitutional."  Wright v. Commonwealth, 52 Va. App. 263, 268, 663 S.E.2d 108, 111 (2008) (citing Delaware v. Prouse, 440 U.S. 648, 658 (1979)); see also Palmer v. Commonwealth, 36 Va. App. 169, 172, 549 S.E.2d 29, 30 (2001) (holding the purpose of a checkpoint was valid when officers stopped vehicles to look for "any violations on the vehicles, such as drivers' license, equipment, [or] inspection").

The Fourth Amendment protects people from "unreasonable searches and seizures."  U.S. Const. amend IV.  It is well settled that stopping a vehicle at a police checkpoint constitutes a seizure within the meaning of the Fourth Amendment.  United States v. Martinez-Fuerte, 428 U.S. 543, 556 (1976); Lowe v. Commonwealth, 230 Va. 346, 349, 337 S.E.2d 273, 275 (1985).  As such, a checkpoint is subject to the Fourth Amendment, but it does not infringe "on an individual's privacy if it is 'carried out pursuant to a plan or practice which is explicit, contains neutral criteria, and limits the conduct of the officers undertaking the roadblock.'"  Burns v. Commonwealth, 261 Va. 307, 322, 541 S.E.2d 872, 883 (2001) (quoting Simmons v. Commonwealth, 238 Va. 200, 203, 380 S.E.2d 656, 658 (1989)).

The reasonableness of such seizures, which are less intrusive than a traditional arrest, depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers."  Brown v. Texas, 443 U.S. 47, 50-51 (1979) (citing Pennsylvania v. Mimms, 434 U.S. 106, 109 (1977)).  In considering the constitutionality of these seizures on appeal, we must weigh "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty."  Id. at 51.

In Brown, the United States Supreme Court noted that a central concern in balancing the foregoing competing considerations has been to make certain that "an individual's reasonable

expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." Id.

> To avoid constitutionally impermissible infringements on privacy, a roadblock must be carried out pursuant to a plan or practice which is explicit, contains neutral criteria, and limits the conduct of the officers undertaking the roadblock. Such a plan serves to insure that one's "reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." Brown, 443 U.S. at 51.

Simmons, 238 Va. at 202-03, 380 S.E.2d at 658; see also Palmer, 36 Va. App. at 177-78, 549 S.E.2d at 33 ("The constitutionality of a checkpoint hinges on the evaluation of the field officer's discretion in establishing the checkpoint and whether or not the execution of the checkpoint 'involves standardless, unbridled discretion by the police officer in the field.'" (quoting Lowe, 230 Va. at 352, 337 S.E.2d at 277)).

Our inquiry, then, is whether the "lunchtime" designation and the absence of a maximum duration for the checkpoint afforded the field officers unbridled discretion that would violate appellant's Fourth Amendment rights.

In Simmons, two Virginia state troopers set up a roadblock that resulted in the defendant's arrest for driving under the influence. Id. at 201, 380 S.E.2d at 657. At trial, one of the troopers testified that they stopped all vehicles that entered the checkpoint. Id. He also testified that the two troopers had established the checkpoint without any prior direction from their supervisors and without an existing plan. Id. He further stated that they had "total discretion regarding where and when they would set up the roadblock." Id. In holding that the roadblock violated the Fourth Amendment, the Supreme Court of Virginia noted that the record was "practically devoid of any evidence which reflects the existence of safeguards against an unreasonable intrusion upon personal privacy resulting from the roadblock." Id. at 203, 380 S.E.2d at 658.

In contrast, there were ample safeguards present in the case now before us. Hanover County had a plan in place, directing the specific procedure to conduct a roadblock. In accordance with the Hanover plan, a supervisor selected a location from a list of approved sites and instructed Sergeant Darby to conduct a checkpoint at lunchtime on May 27, 2009. Sergeant Darby was also required to run the checkpoint for a minimum of 30 minutes. His discretion extended only to the precise time at which he began the checkpoint and the duration of the checkpoint. Further, Darby testified that the general understanding in Hanover County is that a roadblock will be operated for a maximum duration of two hours. This is clearly not the "unfettered" or "unbridled" discretion contemplated by Brown and Lowe.

Hall v. Commonwealth, 12 Va. App. 972, 406 S.E.2d 674 (1991), is also helpful in this analysis. In that case, pursuant to State Police guidelines, First Sergeant Murphy designated 54 checkpoint locations in Accomack County. A field officer could select any particular site from the list at any time during the week. In concluding the checkpoint violated the Fourth Amendment, we addressed the criteria to determine whether the field officer's level of discretion was impermissibly broad:

> [W]e consider what an officer might do within the guidelines. Accomack County is not so large that fifty-four checkpoint stops constitute a significant limitation. A police officer who decided to stop a particular person could do so within these guidelines by ascertaining at what time that person would travel through a particular intersection and set up a roadblock accordingly. Also the officer could observe an individual he wishes to stop, overtake and pass the individual's vehicle and activate the check point before the individual approaches.

Id. at 975, 406 S.E.2d at 676.

The danger of targeting an individual, so problematic in Hall, is not present in this case. Sergeant Darby was instructed precisely where and approximately when to set up the roadblock.

It would have been virtually impossible for him to target anyone while working within those parameters.

Accordingly, "[t]he validity of a checkpoint depends on the amount of discretion remaining with the field officers operating the roadblock." Crouch v. Commonwealth, 26 Va. App. 214, 218, 494 S.E.2d 144, 146 (1997). In Crouch, the field officer was allowed to choose the time of the checkpoint sometime during the work week, but not the location. Furthermore, the officer was required to obtain permission from a supervisor before conducting the checkpoint, and he was also required to stop all vehicles. Id. at 219-20, 494 S.E.2d at 146-47. Unlike in Hall, where the officer's discretion was broad enough as to invite abuse, the officer's limited authority in Crouch to determine the specific time to conduct the roadblock did not constitute unbridled discretion. Id. at 219, 494 S.E.2d at 146. We concluded that the officer's "limited, supervised discretion under explicitly neutral guidelines" did not violate the Fourth Amendment. Id. at 220, 494 S.E.2d at 147.

Therefore, roadblock jurisprudence does not prohibit all discretion by the field officer but only "unbridled" discretion. "Unbridled" means "completely at liberty: unrestrained, ungoverned, unchecked." Webster's Third New International Dictionary 2484 (1993). See also Crouch, 26 Va. App. at 219 n.2, 494 S.E.2d at 147 n.2 ("We reject appellant's argument that [the officer's] ability to choose which direction of traffic to stop gave him excessive discretion. The designation of a specific pre-approved site for the detail was sufficient guidance with respect to location."); Wesley v. Commonwealth, 37 Va. App. 128, 134, 554 S.E.2d 691, 694 (2001) (holding that leaving the duration of the roadblock, up to a two-hour maximum, to the officer's discretion was not unbridled discretion that would render the checkpoint unconstitutional).

The fact that on the day of the roadblock in Crouch, the officer sought prior approval to begin the operation is not dispositive of the analysis. The officer had already selected the date

and time. Nothing in Crouch indicates that the officer sought approval of the time and day, only that he could begin the operation. If the officer had intended to target a specific endeavor, it is difficult to imagine how a supervisor's approval at this late stage would deter such abuse.

In the present case, by directing the roadblock to be held at "lunchtime" Lieutenant Eppling gave the field officers discretion as to the approximate time to conduct the operation. However, the plan provided limits as to the time of operation. Appellant contends "lunchtime" could be anywhere from 10:30 a.m. to 4:30 p.m., based on the hours some restaurants serve lunch. We find this assertion unpersuasive. The term "lunchtime" is commonly understood to mean the midday meal, associated with noon. Thus, Sergeant Darby's choice of 11:00 a.m. to 1:00 p.m. comports with the "lunchtime" mandate. The "lunchtime" designation provided the field officers with a standard. Additionally, the standard was more restrictive than that in Crouch.

We find that Sergeant Darby's choice of an 11:00 a.m. to 1:00 p.m. time frame would not subject an individual to an arbitrary invasion of his reasonable expectation of privacy. See Brown, 443 U.S. at 50. Nothing in the record suggests the decision to execute the checkpoint during those hours involved an effort "to target a specific person or a specific group of people." Sheppard v. Commonwealth, 25 Va. App. 527, 532, 489 S.E.2d 714, 717 (1997) (holding that a checkpoint employed neutral criteria and thus complied with Lowe and Simmons). Sergeant Darby was merely following Lieutenant Eppling's directive.

Appellant next argues that the plan's failure to place a maximum on the duration of the operation rendered the checkpoint unconstitutional. This argument fails as well. Sergeant Darby testified that in the many checkpoints set up, "we've never gone over two hours, and that's the general understanding." Thus, it is reasonable to conclude that the practice of the Hanover

County Sheriff's Office was to limit the duration to two hours.[3] That comports with the requirement, that the roadblock be based on "a plan *or practice* which is explicit, contains neutral criteria, and limits the conduct of the officers undertaking the roadblock." Simmons, 238 Va. at 202-03, 380 S.E.2d at 658 (emphasis added).

Sergeant Darby clearly did not have unbridled discretion to conduct the roadblock. His discretion was limited by the Hanover plan, the actual practices of the sheriff's office, and the directive of Lieutenant Eppling.

## CONCLUSION

For the aforementioned reasons, we conclude that the checkpoint was constitutionally sound and that the trial court did not err in denying appellant's motion to suppress.

Affirmed.

---

[3] We also observe that in Crouch, we noted that State Police guidelines limit "the duration of a checkpoint to between one-half hour and two hours." Crouch, 26 Va. App. at 220, 494 S.E.2d at 147.